Filed 10/28/13  P. v. Gutierrez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHNNY ALFARO GUTIERREZ,<br><br>    Defendant and Appellant. | D063498<br><br><br><br>(Super. Ct. No. RIF142787) |

APPEAL from a judgment of the Superior Court of San Diego County, Patrick F. Magers, Judge.  Affirmed in part; reversed in part with directions.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Johnny Alfaro Gutierrez of assault with a firearm (Pen. Code,[1] § 245, subd. (a)(2)), intimidating a witness (§ 136.1, subd. (b)(1)), possession of a gun by a felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)) and active participation in a criminal street gang (§ 186.22, subd. (a)). The jury also sustained allegations that the assault, witness intimidation and gun possession counts were committed for the benefit of a gang within the meaning of section 186.22, subdivision (b), and Gutierrez personally used a firearm in committing the assault and witness intimidation counts within the meaning of former section 12022.5, subdivision (a) and section 1192.7, subdivision (c)(8). Additionally, the jury found Gutierrez committed the offenses while released from custody pending trial on a felony case. (Former § 12022.1.)[2] In a bifurcated proceeding , the trial court found Gutierrez suffered a prior violent or serious felony or "strike" conviction (§ 667, subds. (b)-(i)) and a prior serious felony conviction (§ 667, subd. (a)).

The trial court sentenced Gutierrez to an indeterminate term of seven years to life on the witness intimidation count plus a determinate term of 12 years four months on the other convictions and allegations.

Gutierrez appeals, raising a multi-prong challenge to his conviction of actively participating in a criminal street gang. Gutierrez also contends the trial court improperly

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    The jury acquitted Gutierrez of a second count of firearm possession by a felon, one count of evading a police officer and one count of receiving stolen property.

allowed testimony about the emotional impact of the assault on the victim's family and erred by giving consciousness of guilt instructions. Further, Gutierrez claims the prosecutor committed misconduct, the court abused its discretion by denying his new trial motion and made various sentencing errors. In a supplemental brief, Gutierrez contends the court erred by imposing the indeterminate sentence on the witness intimidation conviction.

I

FACTS

At about 3:00 a.m., on April 27, 2008, Fernando Meza, a resident of the Casablanca area of Riverside, was awakened by the barking of his dog in the backyard. When Meza went to investigate, he saw Gutierrez on the opposite side of the rear wall of the yard spray painting the wall with graffiti; another man was watching him. The graffiti included "Negro," which is Gutierrez's gang moniker.

Meza told Gutierrez and his companion to go home. Gutierrez indicated to Meza that he was a member of the Casablanca street gang and Meza should not be telling him to go home. Gutierrez took out a gun, put it to Meza's forehead and told Meza he should go to sleep if he did not want to be killed. Meza told Gutierrez to do what he had to do. Gutierrez sprayed Meza's face and neck with the spray paint.

By this time, Meza's wife had entered the backyard. Gutierrez told her to take Meza away if she did not want to see him dead. Meza's wife told Meza, "Let's go." He complied and the couple went inside. As Meza was walking to the house, Gutierrez said if Meza called the police, he would come back and kill him.

3

Meza called 911. While on the phone, Meza and his wife heard gunfire.

Riverside Police Officer Jerry Post was in the neighborhood when he heard four or five gunshots. About 30 seconds later, Post was dispatched to Meza's residence. As Post drove to Meza's residence, he saw a silver truck with several individuals inside; the vehicle was driving away from the area. Post made a U-turn and started to follow the truck. Post observed a gun being thrown from the vehicle. Post turned on his emergency lights and sirens, but the truck continued. The driver ran a stop sign and the truck subsequently struck a curb and wound up facing the wrong direction before stopping. The truck occupants exited the vehicle and began to run. Four of them were detained near the truck. Three others continued to flee. Police found Gutierrez in an RV parked behind a house in the neighborhood. Another person who fled from the truck was hiding under a trailer in the same yard. The third person who fled was not caught. Several of the truck occupants were members of the Vagabundos street gang.

Police brought Meza to the location where the truck occupants were detained. Meza identified Gutierrez as the person who pointed a gun at him, threatened to kill him and sprayed him with spray paint. Meza was unable to identify Gutierrez's companion at the fence because Meza had not paid much attention to him.

Gutierrez stipulated that he is a member of the Vagabundos street gang and was a member on April 27, 2008. He also stipulated that Vagabundos is a criminal street gang within the meaning of section 186.22.

Detective Joe Miera of the Riverside Police Department's gang unit, testified the Casablanca Rifa is a criminal street gang with approximately 250 identified members and

4

it operates in the Casablanca neighborhood of Riverside, which is bisected by Madison Avenue. East of Madison Avenue is controlled by the gang's Evans Street clique and west of Madison is controlled by the Fern Street clique or Vagabundos. Gutierrez is an admitted member of the Vagabundos clique. VBS is the common symbol and name of the Vagabundos clique. Some Vagabundos members use a drawing of a vagabond or homeless person as a symbol for the clique.

Gutierrez has a tattoo on his head that reads "Vagabundos," a "VBS" tattoo on his chest, and a tattoo of a vagabond cartoon character. Underneath his "VBS" tattoo, is "Casablanca" and on top of it is "Doing it 'till death."

In addition to Gutierrez's "Negro" moniker, the graffiti on Meza's wall included "Dangs" and "Rich." Detective Miera testified "Dangs" stood for "Danger," which was Juan Medina's moniker, and "Rich" probably referred to Richard Silva. Medina and Silva are Vagabondos members who were in the silver truck that fled the scene of the assault on Meza. Miera said that the appearance of a gang member's moniker on a wall indicates the gang member was present when the graffiti was placed on the wall. Miera explained to the jury that respect is an important concept within gang culture, and gang members expect to be respected. By committing crimes and violent acts, gang members instill fear in the community and discourage law-abiding citizens from testifying against them. The primary activities of the Casablanca Rifa gang are assaults with a firearm and narcotics sales.

Miera opined that Gutierrez's assault on Meza and his threat to kill Meza were committed for the benefit of, in association with or at the direction of the Casablanca

5

Vagabundos clique because such violent activities instill fear in the community and deter witnesses from testifying against gang members. Miera also opined Gutierrez was an active participant in Casablanca Vagabundos clique in April 2008.

At trial, both Meza and his wife identified Gutierrez as the individual who was spray painting the wall and then pointed a gun at Meza.

II

DISCUSSION

A.    *Active Participation in a Criminal Street Gang*

Gutierrez contends his conviction of actively participating in a criminal street gang must be reversed because of insufficient evidence, an erroneous jury instruction and improper expert testimony. The contention is without merit.

Section 186.22, subdivision (a) provides in part: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished" as a felony or misdemeanor. The substantive offense thus has three elements: "[(1)] Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive' . . . [(2)] knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity, and [(3)] willfully promot[ing], further[ing], or assist[ing] in any felonious criminal conduct by members of that gang.' (§ 186.22[, subd. ](a).)" (*People v. Lamas* (2007) 42 Cal.4th 516, 523; *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).)

6

In *Rodriguez*, our Supreme Court considered whether a defendant violates section 186.22, subdivision (a) "if he commits a felony, but acts alone." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1128.) The Supreme Court observed that in order "to satisfy the third element [of the offense], a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct," and concluded "section 186.22[, subdivision ](a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Id.* at p. 1132.) The court reasoned: "The Legislature . . . sought to avoid punishing mere gang membership in section 186.22[, subdivision] (a) by requiring that a person commit an underlying felony with at least one other gang member." (*Id.* at p. 1134.) The court further explained "section 186.22[, subdivision] (a) reflects the Legislature's carefully structured endeavor to punish active [gang] participants for commission of criminal acts done *collectively* with gang members." (*Id.* at p. 1139.) A defendant who acts alone does not violate section 186.22, subdivision (a). (*Rodriguez*, at p. 1139.)

Pursuant to *Rodriguez*, *supra*, 55 Cal.4th 1125, Gutierrez contends the evidence is insufficient to support his conviction of the section 186.22, subdivision (a) substantive gang offense. *Rodriguez* was decided after Gutierrez had filed his opening brief; he cited it in his reply brief. At our request, the Attorney General filed a supplemental letter brief discussing the impact of *Rodriguez* on this case.

The standard of review for a sufficiency of the evidence claim is well established. We review the entire record in the light most favorable to the judgment to determine

whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) "[T]he substantial evidence rule does not require that the evidence supporting defendant's conviction be direct evidence. For purposes of the rule, substantial evidence encompasses circumstantial evidence and any reasonable inferences to be drawn from such evidence." (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069-1070.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless it is clearly demonstrated that "upon no hypothesis whatever is there sufficient substantial evidence to support [the verdict of the jury]," we will not reverse. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

There was no direct evidence about the identity of the man standing next to Gutierrez at the wall or whether he was a gang member; neither Meza nor his wife paid much attention to him. Nonetheless, there was sufficient circumstantial evidence to establish that Gutierrez's companion was a fellow gang member who aided and abetted him. The jury could reasonably infer that the individual was either Vagabundos gang member Medina or Vagabundos gang member Silva because (1) their monikers were on the wall along with Gutierrez's moniker; (2) typically, a gang member is present when his moniker is spray painted on a wall; and (3) Medina and Silva were in the getaway vehicle that Officer Post followed. The jury also could reasonably conclude that Medina and/or Silva aided and abetted Gutierrez in his assault and intimidation of Meza by providing

8

"backup" by his supportive presence.  Gang members often act in such a role or as lookouts when a member of their gang commits a crime.

Gutierrez contends CALCRIM No. 1400[3] allowed the jury to convict him of section 186.22, subdivision (a) on a theory that he acted alone and thereby violated the principle enunciated in *Rodriguez*, *supra*, 55 Cal.4th 1125.  Assuming, without deciding, that CALCRIM No. 1400 is infirm because it implies one can be guilty of the crime when acting alone, we find the instructional error was not prejudicial.

"[A]n erroneous instruction that omits an element of an offense is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 [(*Chapman*)].  [Citations.]  In general, the *Chapman* test probes 'whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."'"  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 662-663.)  Thus, "even when jury instructions completely omit an element of a crime, and therefore deprive the jury of the opportunity to make a finding on that element, a conviction may be upheld under *Chapman* where there is no 'record . . . evidence that could rationally lead to a contrary finding' with respect to that element."  (*People v. Davis* (2005) 36 Cal.4th 510, 564.)

---

3     The jury was instructed pursuant to CALCRIM No. 1400 as follows:  "The defendant is charged in Count 7 with participating in a criminal street gang in violation of Penal Code[, section] 186.22[, subdivision ](a).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant actively participated in a criminal street gang;  [¶]  2. When the defendant participated in the gang, he knew that members of the gang engage in or have engaged in a pattern of criminal gang activity;  AND  [¶]  3. The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang either by:  a. directly and actively committing a felony offense; OR b. aiding and abetting a felony offense. . . ."

9

Here, there was ample evidence Gutierrez did not act alone in assaulting and intimidating Meza. This issue was not contested. Moreover, counsel's arguments did not suggest to the jury that Gutierrez could be convicted of active participation in a gang if he acted alone. Therefore, we conclude "'"beyond a reasonable doubt the error complained of did not contribute to the verdict obtained."'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 774.)

Gutierrez also attacks his conviction because Detective Miera was permitted to give his expert opinion that Gutierrez was an active participant in Casablanca Vagabundos. Gutierrez's trial counsel did not specifically object below and therefore the claim of error was forfeited on appeal. (Evid. Code, § 353, subd. (a); *People v. Bolin* (1998) 18 Cal.4th 297, 321; see also *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208 [defense counsel's general objection to entirety of gang expert testimony insufficient to preserve objection to expert opinion on issue of defendant's intent to benefit gang].)

In any event, Gutierrez was not prejudiced by this opinion testimony. Gutierrez stipulated he was a member of the Vagabundos clique of the Casa Blanca Rifa street gang. The jury also learned that Gutierrez has several tattoos celebrating his gang membership, including the word "Vagabundos" on his head and a vagabond cartoon character. As the prosecutor noted in argument, Gutierrez had made his body a "billboard of gang membership." Furthermore, on April 27, 2008, when he committed the instant crimes, Gutierrez was in the company of several fellow gang members. He also had been in the company of gang members on other occasions when contacted by police. Given this evidence, it is not reasonably probable that Gutierrez would have

10

achieved a more favorable result if Miera had not been allowed to opine that Gutierrez was an active participant in the gang.

B.      *Admission of Testimony of Crime Impact on Victim*

On direct examination, the prosecutor asked Meza how the incident affected his life.  The court overruled defense counsel's relevancy objection.  Meza answered:

> "Since that day my life changed totally, to my family.  Even now we're traumatized.  First, I lost my house.  We had to leave the area.  And since then we have been frightened and fear that something should [*sic*] happen to us.  Really, we don't live in peace.  And I think that's going to last the rest of our lives because it was something that was very, very hard for us in all aspects. . . .  Nothing will be the same because we will always feel that fear that something is going to happen to us.  It has affected our lives totally."

Meza also testified that the family moved after the incident because "we were in danger." Gutierrez attributed the loss of the family home to his inability to keep up his house payments while paying rent at another location.

Gutierrez contends the trial court committed prejudicial error by allowing Meza to testify about how the crimes had impacted his family and led to the loss of his home.

Although Gutierrez is correct that it was improper to admit evidence of how the crimes affected the victim as inconsistent with an objective determination of guilt, we conclude the error did not prejudice him.  Meza's victim impact testimony was relatively brief, and the evidence of Gutierrez's guilt was strong.  Both Meza and his wife identified Gutierrez as the person who pointed a gun at Meza, sprayed paint at him and threatened to kill him if he called the police.  Gutierrez's moniker, "Negro," was sprayed painted on the wall behind Meza's residence.  Further, Gutierrez fled from a vehicle that was leaving

11

the area after police chased the vehicle. During the police chase, two guns were thrown from the vehicle.

We find no reasonable probability that the sympathetic victim evidence contributed to the jury's guilty verdicts in this case. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)[4] Improperly admitted victim-impact evidence should not be treated any differently than the admission of other types of improperly admitted evidence. (*People v. Redd* (2010) 48 Cal.4th 691, 731, fn. 20.) In other words, we evaluate the prejudicial effect of improper victim-impact evidence as we would the prejudicial effect of any other improperly admitted evidence.

C.      *Consciousness of Guilt Instructions*

Gutierrez contends his due process rights were violated when the trial court gave two consciousness of guilt instructions — CALCRIM Nos. 371 and 372 — because the instructions created permissive inferences that lessened the prosecution's burden of proof. The contention is without merit.

Due process requires a rational relationship between a permissive inference and the fact on which it is based. (*People v. Mendoza* (2000) 24 Cal.4th 130, 180 (*Mendoza*).) A defendant's due process rights are violated by a permissive inference "'only if the suggested conclusion is not one that reason and common sense justify in

---

4      We note the jury acquitted Gutierrez of three counts where the prosecution's evidence was weaker. (See fn. 2, *ante*.)

12

light of the proven facts before the jury.'" (*Ibid*., quoting *Francis v. Franklin* (1985) 471 U.S. 307, 314-315.)

Our Supreme Court has upheld instructions that permit the jury to infer "consciousness of guilt" from proven facts, such as making false statements regarding the crime charged (CALJIC No. 2.03), attempts to dissuade a witness (CALJIC No. 2.04), suppression of evidence (CALJIC No. 2.06) and flight (CALJIC No. 2.52) against various challenges. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102; *Mendoza*, *supra*, 24 Cal.4th at p. 180; *People v. Jackson* (1996) 13 Cal.4th 1164, 1222-1226 (*Jackson*); *People v. Turner* (1994) 8 Cal.4th 137, 202 (*Turner*).)

Here, pursuant to CALCRIM No. 371, the jury was instructed: "If the defendant tried to hide evidence or discourage someone from testifying against him, that conduct may show that he was *aware of his guilt*. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself." (Italics added.)

Also, pursuant to CALCRIM No. 372, the jury was instructed: "If the defendant fled or tried to flee (immediately after the crime was committed/or after he was accused of committing the crime), that conduct may show that he was *aware of his guilt*. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However evidence that defendant fled cannot prove guilt by itself." (Italics added.)

The predecessor to CALCRIM No. 371 was CALJIC No. 2.06, which read in pertinent part: "If you find that a defendant attempted to suppress evidence . . . , this

13

attempt may be considered by you as a circumstance tending to show a *consciousness of guilt*. However, this conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide." (Italics added.) The constitutionality of CALJIC No. 2.06 was upheld in *Jackson*, *supra*, 13 Cal.4th at page 1224.

The predecessor to CALCRIM No. 372 was CALJIC No. 2.52, which read: "The flight of a person immediately after the commission of a crime, or after he is accused of the crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." In upholding the constitutionality of CALJIC No. 2.52, the Supreme Court noted the instruction permitted a jury to infer "that the flight of a defendant immediately after the commission of a crime indicates a *consciousness of guilt*." (*Mendoza*, *supra*, 24 Cal.4th at p. 180, italics added.) The high court noted that allowing "a jury to infer, if it so chooses, that the flight of a defendant immediately after the commission of a crime indicates a consciousness of guilt" does not violate due process. (*Ibid*.)

Gutierrez distinguishes the CALJIC instructions, which passed constitutional muster, from the CALCRIM instructions given here based on the latter's use of the phrase "aware of his guilt" rather than "consciousness of guilt." Gutierrez contends the distinction is constitutionally significant because the newer instructions go beyond merely allowing an inference of consciousness of guilt and permit an irrational inference of guilt itself. Gutierrez argues an awareness of guilt can exist only if a defendant were

14

in fact guilty, and therefore, the "awareness of guilt" language allows a jury to infer one fact, guilt, from other facts, such as suppression of evidence or discouraging victim testimony.

Gutierrez's argument has been rejected in *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154 (*Hernández Ríos*), which addressed the difference in phraseology between the CALJIC No. 2.06 and CALCRIM No. 372. We agree with the reasoning and conclusion of *Hernández Ríos*:

> "Our short etymological analysis of Ríos's argument begins with a dictionary definition of the word 'aware': 'Having knowledge or cognizance.' (American Heritage Dict. (4th ed. 2000) p. 125.) In reliance on the dictionary's list of synonyms that include the word 'aware,' Ríos argues that the word 'implies knowledge gained through one's own perceptions or by means of information.' (Italics omitted; see *ibid*.) 'Conscious,' another word on the list, 'emphasizes the recognition of something sensed or felt' (*id*., at p. 125, italics omitted), which, of course, focuses on the acquisition of knowledge not by 'information' but by 'perceptions.' (*Ibid*.) Since the dictionary defines 'consciousness' as '[s]pecial awareness or sensitivity: class consciousness; race consciousness' (*id*. at p. 391; italics omitted), ipso facto the special awareness that *Mendoza* allows a jury to infer from a flight instruction is 'guilt consciousness' (in the syntax of the dictionary) or 'consciousness of guilt' (in the syntax of the California Supreme Court). (Compare American Heritage Dict., *supra*, at p. 391 (italics omitted) with *Mendoza*, *supra*, 24 Cal.4th at p. 180.) As the inference in *Mendoza* passes constitutional muster, so does the inference here." (*Hernández Ríos*, *supra*, 151 Cal.App.4th at pp. 1158-1159.)

In other words, the terms are synonymous.

The use of "aware of his guilt" language in CALCRIM Nos. 371 and 372 does not impermissibly suggest that the defendant is guilty. Instead, like CALJIC Nos. 2.06 and 2.52, the only reading of the instructions that would occur to any reasonable juror familiar with the English language is that these CALCRIM instructions allow a juror to

15

infer a defendant's consciousness of guilt from the defendant's suppression of evidence and/or flight if the facts warrant such an inference. The instructions, read as a whole, do not state that the defendant is guilty. Accordingly, like their CALJIC predecessors, neither CALCRIM No. 371 nor CALCRIM No. 372 violates a defendant's right to due process nor impermissibly lower's the prosecution's burden of proof.

Furthermore, we note jury instructions are reviewed as a whole "to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove the defendant's guilt beyond a reasonable doubt." (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) It is not reasonably likely that the jury here understood the instructions concerning an awareness of guilt as stating that, if Gutierrez fled or threatened Meza, then he was guilty of the charged offenses. The jury was instructed that if the defendant engaged in certain conduct, that "conduct *may* show that he was aware of his guilt." (Italics added.) The jury was further instructed that it was "up to you [the jurors] to decide [the] meaning and importance" of the conduct by defendant. Moreover, the jury was explicitly instructed that evidence of such conduct "cannot prove guilt by itself." Considering the entirety of the instruction, we do not believe it reasonably likely that the jury would have understood the instruction as a mandatory or burden-shifting presumption as Guterriez urges.

D.    *Prosecutorial Misconduct*

Gutierrez contends the prosecutor committed misconduct by (1) suggesting the reasonable doubt standard of proof did not apply and (2) denigrating defense counsel.

16

"The standards governing review of misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" . . . Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.'" (*People v. Friend* (2009) 47 Cal.4th 1, 29, citations omitted.) Prosecutorial misconduct under the federal Constitution requires reversal of a defendant's conviction unless a reviewing court finds it harmless beyond a reasonable doubt. (*People v. Cook* (2006) 39 Cal.4th 566, 608.) This is the test set forth in *Chapman*, *supra*, 386 U.S. 18, 24. Prosecutorial misconduct under state law requires reversal when a reviewing court finds that it is reasonably probable the result of a defendant's trial would have been more favorable without the misconduct. (*Cook*, at p. 608.) This is the test set forth in *Watson*, *supra*, 46 Cal.2d at page 836.

Generally, trial counsel's failure to object to prosecutorial misconduct results in a forfeiture of the issue on appeal. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) However, where, as here, counsel did not object at trial to alleged prosecutorial misconduct, the defendant may argue on appeal that counsel's inaction violated his constitutional right to effective assistance of counsel. (*Ibid.*) Accordingly, we will address the merits of Gutierrez's claim despite the lack of an objection at trial.

At issue are these comments by the prosecutor during his closing argument:

"The defense talked about reasonable doubt. Reasonable doubt. I'll submit to you, folks, reasonable doubt is not a standard in our criminal justice system for those people who terrorize the community — it's not a standard

17

> for those who terrorize the community to hide under and say you didn't take my fingerprints, I didn't do it. Because you didn't get my fingerprints, you can't prove I did it. Ladies and gentlemen, the best evidence in this case is the identification. That's the best evidence."

and

> "I did learn a few things when I was in law school also. I learned that if you're a defense attorney and you don't have a defense in your case, you attack the prosecutor, you attack the police, you attack everybody else, and you try to hide the truth."

"'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.'" (*People v. Wilson* (2005) 36 Cal.4th 309, 337 (*Wilson*).) "'[W]e "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*Id.* at p. 338.) "A prosecutor is given wide latitude during closing argument. The argument may be vigorous as long as it is a fair comment on the evidence, which can include reasonable inferences or deductions to be drawn therefrom." (*People v. Harrison* (2005) 35 Cal.4th 208, 244.) Further, although a defendant may single out certain comments made by the prosecutor during argument in order to demonstrate misconduct, as the reviewing court we "must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203 (*Cole*).)

To the extent the prosecutor's 'reasonable doubt comment suggested that the state is not held to a reasonable doubt standard when gang members are tried for crimes, the comment was a misstatement of the law and improper. It is improper for a prosecutor to

18

misstate the law. (*People v. Bell* (1989) 49 Cal.3d 502, 539.) However, it is highly unlikely the jury interpreted the comment in this manner. (*Wilson*, *supra*, 36 Cal.4th at pp. 337-338.) To put the prosecutor's reasonable doubt comment in context (*Cole*, *supra*, 33 Cal.4th at p. 1203), we note defense counsel had argued that the prosecution had not proven its case because the police had failed, among other things, to fingerprint the recovered guns, and the identification evidence was questionable. In responding to defense counsel's argument, the prosecutor was arguing the identification by Meza and his wife trumped the proof questions raised by the defense and established guilt beyond a reasonable doubt.

More importantly, the jury was properly instructed on the definition of reasonable doubt, admonished it must follow the law as stated by the court and told the statements of the attorneys were not evidence. In particular, the jury was instructed: "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." " 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' " (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268 [addressing prosecutorial misconduct through improper reasonable doubt argument]; *People v. Stitely* (2005) 35 Cal.4th 514, 559 ["we assume the jury abided by the court's admonitions and instructions, and thereby avoided any prejudice"].) Given the context of the arguments and these jury instructions, we conclude the prosecutor's reasonable doubt comment was harmless

19

beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) For lack of prejudice, Gutierrez's first claim of prosecutorial misconduct is unavailing.

Gutierrez's second claim of prosecutorial misconduct fails because there was no misconduct. Although it is misconduct when a prosecutor in closing argument "denigrat[es] counsel instead of the evidence" because "[p]ersonal attacks on opposing counsel are improper and irrelevant to the issues . . ." (*People v. Sandoval* (1992) 4 Cal.4th 155, 184), the prosecutor's comment here cannot be considered as an improper attack on defense counsel's integrity or as casting aspersions on him.

For example, in *People v. Breaux* (1991) 1 Cal.4th 281, 305 (*Breaux*), the prosecutor argued: "'[I]f you don't have the law on your side, argue the facts. If you don't have the facts on your side, argue the law. If you don't have either one of those things on your side, try to create some sort of a confusion with regard to the case because any confusion at all is to the benefit of the defense.'" The Supreme Court found when the prosecutor's remarks were taken in context, they "could only have been understood as cautioning the jury to rely on the evidence introduced at trial and not as impugning the integrity of defense counsel." (*Id*. at p. 306.) In *People v. Medina* (1995) 11 Cal.4th 694, 759 (*Medina*), our Supreme Court rejected a misconduct claim based on the prosecutor arguing "'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something . . . .'" The Supreme Court called these comments "unobjectable. To observe that an experienced defense counsel will attempt to 'twist' and 'poke' at the prosecution's case does not amount to a personal attack on counsel's integrity." (*Ibid*.)

The prosecutor's comment in this case falls in the same category as that in *Breaux*, *supra*, 1 Cal.4th at page 305, and *Medina*, *supra*, 11 Cal.4th at page 759, and was not an improper personal attack on defense counsel's integrity.

E.     *Denial of New Trial Motion*

Gutierrez contends the trial court abused its discretion by denying his motion for a new trial based on ineffective assistance of counsel.  The contention is without merit.

Following the verdict, Gutierrez's retained counsel, Stephen Sweigart, informed the court that his client wanted to file a new trial motion alleging ineffective assistance of counsel.  The court appointed new counsel for purposes of such a motion.  New counsel reviewed the case, but determined there were no grounds for a new trial motion based on ineffective assistance of counsel or other bases.  Gutierrez, appearing in pro per, proceeded with a new trial motion; his principal ground was ineffective assistance of counsel.

Ineffective assistance of counsel, if proven, is a valid, nonstatutory ground for a new trial.  (*People v. Fosselman* (1983) 33 Cal.3d 572, 582-583.)

We review an order denying a motion for new trial for abuse of discretion.  (See *Turner*, *supra*, 8 Cal.4th at p. 212 ["'"The determination of a motion for new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."'"].)  Because the new trial motion was based on ineffective assistance of counsel, the applicable standard is whether Gutierrez "demonstrate[d] (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and

21

(2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541, citing, among other cases, *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).)

Gutierrez failed to meet his burden below as he does on appeal. His ineffective assistance of counsel claim has been premised on Sweigart's purported failure to investigate the case, find percipient witnesses, retain a qualified investigator, object to hearsay statements by prosecution witnesses and challenge Meza's out-of-court identification. However, Gutierrez has not demonstrated the investigation conducted by Sweigart, who first appeared in the case in July 2010 was insufficient. Contrary to Gutierrez's assertions, the record shows Sweigart brought out many of the shortcomings of the prosecution's case, such as the lack of fingerprinting and gun residue testing, evidentiary inconsistencies regarding Meza's curb-side identification, payment by law enforcement of $2,000 to Meza for housing, and evidentiary discrepancies regarding the description Meza provided to the 911 operator. Gutierrez's criticism of Sweigart for not seeking an in-person lineup is unfounded; this was a strategic decision and one that should not be second-guessed under the deferential review of counsel's trial tactics articulated in *Strickland*, *supra*, 466 U.S. at page 689. Meza very well could have again identified Gutierrez during an in-person lineup, which, of course, would have seriously compromised the defense's strongest argument.

The trial court did not abuse its discretion by denying Gutierrez's motion for a new trial.

22

F.      *Refusal to Dismiss Prior Strike Conviction*

Gutierrez contends the trial court abused its discretion by denying his motion to deny his prior strike conviction for assault with a firearm.  We disagree.

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation.  (§ 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504; *People v. Meloney* (2003) 30 Cal.4th 1145, 1155.)  A trial court's refusal to strike a prior conviction allegation is reviewed under the highly deferential abuse of discretion standard.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).)  A defendant seeking reversal must "'clearly show that the sentencing decision was irrational or arbitrary.'"  (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)  It is not enough to show that reasonable people might disagree about whether to strike a prior conviction.  (*Carmony*, *supra*, at p. 378.)  Only extraordinary circumstances justify a finding that a career criminal is outside the three strikes law.  (*Ibid*.)  Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary."  (*Ibid*.)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  The three strikes law "not only establishes a sentencing

23

norm, it carefully circumscribes the trial court's power to depart from this norm. . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the court's decision will not be disturbed on appeal. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

The record before us shows the trial court did not abuse its discretion in denying the motion. Gutierrez's criminal record dates back to 1993 when he was a juvenile. In 1998, when he was 20 years old, he was convicted of felony assault with a firearm. In 2001 and 2003, he was convicted of felony drug offenses. Each time Gutierrez was granted parole, he violated the parole and was returned to prison. He was on parole for his 2003 drug sales conviction when he committed these offenses in 2008. Although Gutierrez was 33 at the time of sentencing in 2012, he had continued to maintain a gang lifestyle and a proclivity for guns. The court noted Gutierrez had a "continuing pattern of criminality" and the record bears this out.

Gutierrez argues the refusal to dismiss the strike conviction was an abuse of discretion because the strike was more than a decade old and his other offenses were nonviolent. We are not persuaded. Our task is not to reweigh the facts. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) The record supports the trial court's conclusion that notwithstanding the age of the strike conviction, Gutierrez has maintained a criminal lifestyle. Moreover, despite the nonviolent nature of some of Gutierrez's past crimes, this case does not deserve such a label. Pointing a firearm at a citizen's face is a violent act.

24

The trial court's ruling affirmatively shows that it reviewed Guttierez's present felonies, prior strike, background, character, and prospects. There is no indication that the trial court failed to consider any relevant information before it. Accordingly, Gutierrez has failed to overcome the "'strong presumption' . . . that the trial judge properly exercised his discretion." (*In re Large* (2007) 41 Cal.4th 538, 551, citations omitted.)

G.    *Section 654*

Gutierrez contends the court erroneously imposed a consecutive sentence for his felon in possession of a firearm count (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)) and the sentence should have been stayed under section 654. He contends that because the court imposed an enhancement under section 12022.5 for personal use of a firearm in connection with the witness intimidation count, the challenged sentence constituted impermissible double punishment. The contention is without merit.

Section 654 bars double punishment for multiple offenses that constitute one indivisible transaction. (*People v. Hicks* (1993) 6 Cal.4th 784, 788-789.) However, a defendant may be separately punished for offenses that share common acts and are part of an indivisible course of conduct where the defendant entertained multiple criminal objectives. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268; *People v. Green* (1996) 50 Cal.App.4th 1076, 1084-1085 (*Green*).) Whether a course of conduct is indivisible depends on the defendant's intent and objective rather than the temporal proximity of the offenses. (*Hicks*, at p. 789; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).)

25

In a section 654 analysis, the defendant's intent and objective are factual questions to be determined by the trial court. (*Green*, *supra*, 50 Cal.App.4th at p. 1085.) We affirm the court's findings if there is substantial evidence to support them. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) We review the trial court's findings "'"in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence."'" (*Id.* at pp. 1312-1313; *Green*, at p. 1085.)

Whether a violation of former section 12021, subdivision (a)(1) (now § 29800, subd. (a)(1)) constitutes a transaction divisible from the offense in which the defendant uses the firearm depends on the facts and evidence of each individual case. (*People v. Bradford* (1976) 17 Cal.3d 8, 22.) Multiple punishment is improper where the evidence shows "at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense." (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412 (*Ratcliff*).) However, separate punishment for the firearm possession is proper "when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*Jones*, *supra*, 103 Cal.App.4th at p. 1145.)

Here, the evidence supports the conclusion Gutierrez possessed the gun before arriving at the scene of the crime. There was no evidence presented to support a theory that "fortuitous circumstances" placed the handgun in Gutierrez's possession while he was applying graffiti to Meza's wall. Because the court could find Gutierrez possessed the handgun before he arrived at the scene, his violation of former section 12021,

26

subdivision (a)(1) (now § 29800, subd. (a)(1)) was complete before his arrival. (*Jones,* *supra,* 103 Cal.App.4th at p. 1147.) Because his gun possession preceded the witness intimidation, the court did not violate section 654 by imposing the gun enhancement on the intimidation count and the sentence for the gun possession. (*Ratcliff, supra,* 223 Cal.App.3d at p. 1413; *Jones,* at p. 1147.)

H.      *Indeterminate Sentence on Witness Intimidation Count*

Gutierrez contends the trial court erred by imposing an indeterminate term of seven years to life on the witness intimidation count pursuant to section 186.22, subdivision (b)(4)(C). As the Attorney General concedes, the contention has merit.

Gutierrez was convicted of "attempt[ing] to prevent or dissuade" a victim or witness from reporting a crime. (§ 136.1, subd. (b)(1).) The jury further found Gutierrez committed the offense for the benefit of a criminal street gang. (§ 186.22, subd. (b).) For certain enumerated crimes, the gang statute calls for an indeterminate enhancement. (§ 186.22, subd. (b)(4)(A)-(C).) Among the enumerated crimes is making "threats to victims and witnesses, as defined in Section 136.1." (§ 186.22, subd. (b)(4)(C).) The gang enhancement for this crime is an indeterminate term of seven years to life. (*Ibid.*)

In *People v. Lopez* (2012) 208 Cal.App.4th 1049, 1065, the Court of Appeal held the indeterminate gang enhancement of section 186.22, subdivision (b)(4)(C) may be imposed for victim or witness intimidation only if the defendant was convicted of section

136.1, subdivision (c)(1) because that subdivision is the only provision in section 136.1 that refers to use of an implied or express threat.[5]

People v. Lopez, supra, 208 Cal.App.4th 1049, is controlling. Gutierrez was convicted of section 136.1, subdivision (b)(1), not subdivision (c)(1), of that statute. Further, the jury did not make any factual finding that Gutierrez used threats; thus, under Apprendi v. New Jersey (2000) 530 U.S. 466, 490, and its progeny, imposition of an indeterminate enhancement under section 186.22, subdivision (b)(4)(C) violates constitutional precepts.[6]

## DISPOSITION

The seven-year-to-life sentence for intimidating a witness is reversed. The case is remanded for resentencing and reduction of the $240 restitution fine and $240 parole revocation restitution fine to $200 each. (See fn. 6, ante.) The trial court shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

---

[5]    Subdivision (c)(1) of section 136.1 reads: "Every person doing any of the acts described in subdivision (a) or (b) knowingly and maliciously under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person."

[6]    The Attorney General also concedes under the prohibitions against ex post facto laws, the $240 restitution fine under section 1202.4, subdivision (b)(1) should be reduced to $200 to reflect the statutory amount at the time the crimes were committed. The same principle calls for reducing the $240 parole revocation restitution fine under section 1202.45, subdivision (b) to $200.

In all other respects, the judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

29