[No. A092450. First Dist., Div. Three. July 25, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JACOB WAYNE HUTCHINS, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I., II., and V.

**COUNSEL**

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

McGUINESS, P. J.—A jury convicted appellant Jacob Wayne Hutchins of second degree murder and shooting at a person from a motor vehicle. In addition, the jury found true several special allegations made in connection with those counts, including that appellant had committed the crimes to benefit a criminal street gang, and had personally and intentionally discharged a firearm proximately causing great bodily injury. The court sentenced him to a total unstayed prison term of 42 years to life. On appeal, appellant contends: (1) the jury instruction given by the trial court in accordance with CALJIC No. 17.41.1 was constitutionally deficient and we must therefore reverse his conviction; (2) the trial court violated Penal Code section 654[1] in imposing the additional statutory term of 25 years to life under section 12022.53 on the basis of the enhancement finding that appellant's personal and intentional discharge of a firearm had proximately caused great bodily injury to the victim; (3) the trial court erroneously failed to award appellant presentence conduct credits; and (4) the trial court imposed an unauthorized two-year gang-related sentencing enhancement under section 186.22.

On the basis of our review of the entire record we conclude that any potential error arising from the trial court's use of the controverted instruction pursuant to CALJIC No. 17.41.1 was harmless beyond a reasonable doubt. We agree with appellant that the trial court erred in denying him presentence conduct credits under the authority of current section 190, subdivision (e), which was not in effect at the time appellant committed the offenses at issue. On the People's concession, we strike the two-year section 186.22 gang enhancement. In all other respects we affirm the judgment.

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. FAILURE TO STAY ENHANCEMENT PENALTY UNDER SECTION 654

In sentencing appellant on his second degree murder conviction, the trial court imposed an additional term of 25 years to life for personal and

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.
*See footnote, *ante*, page 1308.

intentional discharge of a firearm proximately causing the death of the victim of the shooting, as required by section 12022.53, subdivision (d). The trial court was faced with an enhancement statute specifically setting out substantially increased prison sentences for the use of a firearm in the commission of designated felonies, including murder. (*People v. Martinez* (1999) 76 Cal.App.4th 489, 493 [90 Cal.Rptr.2d 517]; § 12022.53, subds. (a)(1), (d).) Appellant contends that by imposing both a 15-year to life term for the second degree murder and an additional enhancement penalty of 25 years to life pursuant to section 12022.53, subdivision (d), the trial court punished him twice for the same conduct—firing the shots that killed the deceased victim. Thus, he insists the trial court's imposition of the additional statutory term was in violation of section 654, because he had already been punished for murder under count 1 "for precisely the same act that constituted this enhancement." Appellant is wrong.

Section 654, subdivision (a), states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." ■ The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although these distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one of the separate offenses arising from the single act or omission—the offense carrying the highest punishment. (*Neal v. State of California* (1960) 55 Cal.2d 11, 18-21 [9 Cal.Rptr. 607, 357 P.2d 839]; 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, §§ 129, 149, pp. 191-193, 213-215.)

■ Each case must be determined on its own circumstances. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; *People v. Beamon* (1973) 8 Cal.3d 625, 630-639 [105 Cal.Rptr. 681, 504 P.2d 905].) The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657 [35 Cal.Rptr.2d 478]; *People v. McGuire* (1993) 14 Cal.App.4th 687, 698 [18 Cal.Rptr.2d 12]; *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408 [273 Cal.Rptr. 253].) "We must 'view the evidence in a light most favorable to the respondent and

presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" *(People v. McGuire, supra,* 14 Cal.App.4th at p. 698.)

■■■ The plain language of the statute at issue in this case, section 12022.53, mandates imposition of the additional enhancement sentence. Thus, the statute clearly and unambiguously states that "[*n*]*otwithstanding any other provision of law*, any person who is convicted of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, *shall be punished* by a term of imprisonment of 25 years to life in the state prison, *which shall be imposed in addition and consecutive to the punishment prescribed for that felony*." (§ 12022.53, subd. (d), italics added.)[4] Elsewhere the same statute specifically provides that "[*n*]*otwithstanding any other provision of law*," a trial court "*shall not*" suspend execution or imposition of sentence for any person found to come within the provisions of this enhancement statute, or strike any allegation or finding that brings a person within the provisions of this section. (§ 12022.53, subds. (g), (h), italics added.)[5]

Clearly, in enacting this provision the Legislature intended to *mandate* the imposition of substantially increased penalties where one of a number of crimes, including homicide, was committed by the use of a firearm. In so doing, the express language of the statute indicates the Legislature's intent that section 654 *not apply* to suspend or stay execution or imposition of such enhanced penalties. Nor should section 654 logically apply in such a situation. The manner in which any crime is accomplished may vary in innumerable respects. Thus, "[s]econd degree murder may be committed in a myriad of ways, some that involve use of a firearm, and others, such as stabbing, poisoning, or strangling, that do not involve use of this type of weapon." *(People v. Hansen* (1994) 9 Cal.4th 300, 317 [36 Cal.Rptr.2d 609, 885 P.2d 1022].) Section 654 is not implicated by the imposition of a sentencing enhancement on a particular manner of committing murder—with the use of a firearm—adjudged by society through its legislative representatives as particularly egregious and dangerous. What the Legislature has done by enacting section 12022.53 is not to punish the same single criminal act more

---

[4]Murder is, of course, specified as one of the felonies to which this provision applies. (§ 12022.53, subd. (a)(1).)

[5]"Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person found to come within the provisions of this section." (§ 12022.53, subd. (g).) "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." (§ 12022.53, subd. (h).)

than once or in more than one way. Instead, in determining that a criminal offender may receive additional punishment for any single crime committed with a firearm, the Legislature has chosen to enhance or expand the punishment imposed on a single underlying crime, where committed by use of a firearm, in order to deter a particular form of violence judged especially threatening to the social fabric.

This interpretation of section 12022.53 is supported by case law. In examining similar sentencing enhancement statutes directed at firearms use, the Courts of Appeal have specifically held that section 654 does not bar imposition of a single firearms use enhancement to an offense committed by the use of firearms, unless firearms use was a specific element of the offense itself. Indeed, where imposition of a firearms use enhancement is made *mandatory* notwithstanding other sentencing laws and statutes, it is *error* to apply section 654 to stay imposition of such an enhancement. (*People v. Ross* (1994) 28 Cal.App.4th 1151, 1155-1160 [33 Cal.Rptr.2d 894]; accord, *People v. Myers* (1997) 59 Cal.App.4th 1523, 1529-1534 [69 Cal.Rptr.2d 889]; see also *People v. Hansen, supra,* 9 Cal.4th at pp. 316-317.) In this case, as in *Ross,* appellant's "use of the firearm was not a crime in and of itself. The crime was the extinction of a human life . . . . The gun was simply the method selected by [appellant] to accomplish the crime, and the particular method selected subjects [him] to an additional penalty. Because the underlying crime and the enhancement are not identical, there is and can be no double punishment under section 654." (*People v. Ross, supra,* 28 Cal.App.4th at p. 1159.)

Thus, the purpose of section 12022.53 is to deter persons from using firearms in the commission of specified felonies. In the case of subdivision (d) of that section, the statute's purpose quite specifically is to deter persons from inflicting great bodily injury or death through the intentional discharge of firearms in the commission of such felonies, the exact result of the offense which occurred here. "To refrain from imposing the enhancement would contradict the exact terms of the statute, preventing the imposition of the enhancement in many instances of murder, manslaughter and attempted murder, the most vicious results of [personally and intentionally] discharging a weapon [in the commission of a felony]. Imposing the enhancement fulfills the legislative purpose of punishing more severely those crimes which actually result in great bodily injury. [Citation.]" (*People v. Myers, supra,* 59 Cal.App.4th at p. 1533.) Under appellant's interpretation of section 12022.53, where a victim dies from bullets fired in the commission of a felony, the person who pulls the trigger can never have the sentence enhanced pursuant to that statute. "This result would undermine the intent of the legislation, which was to punish such acts harshly." (59 Cal.App.4th at p. 1533.)

In short, we agree with respondent that the law is not punishing appellant twice for the same act; rather, the law is punishing him once each for the components of that act which make it so dangerous and antisocial. We conclude the trial court did not err in failing to apply section 654 to stay the section 12022.53, subdivision (d) enhancement found true in connection with appellant's conviction of second degree murder.

## IV. FAILURE TO AWARD PRESENTENCE CONDUCT CREDITS

■ The trial court awarded appellant 788 days' credit for time served while awaiting trial, but denied him any presentence good conduct credits under the authority of section 190, subdivision (e).[6] Appellant now contends the trial court erred in denying him an award of conduct credits on this basis. Appellant *is correct.*

Section 190 is the principal Penal Code provision on the punishment for murder. It was originally adopted by initiative (Prop. 7, the so-called Briggs Initiative) at the General Election of November 7, 1978. In its current form, subdivision (e) of section 190 now states: "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall *not* apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall *not* be released on parole prior to serving the minimum term of confinement prescribed by this section." (Italics added.) Under this subdivision, then, a convicted murderer is not entitled to any credits available to others pursuant to section 2930 et seq., which set out provisions for prison time credits for good behavior, participation, and worktime in prison. This language was adopted by the Legislature in 1996 and again in 1997. However, because section 190 was originally enacted by initiative, the Legislature was required to submit its adoption of these subsequent amendments to the electorate for approval. (Cal. Const., art. II, § 10, subd. (c); *In re Oluwa* (1989) 207 Cal.App.3d 439, 442-445 [255 Cal.Rptr. 35].) In fact, the pertinent language of current subdivision (e) was not submitted to and approved by the voters until the election held on June 2, 1998. Only after this electoral approval did it become effective as of June 3, 1998. (Stats. 1996, ch. 598, § 1; Stats. 1997, ch. 413, § 1 (Prop. 222), approved June 2, 1998.)

Thus, the language of section 190 on which the trial court and the People rely—providing that the conduct credit provisions of article 2.5 do *not* apply

---

[6]As appellant correctly notes, the trial court actually based its ruling on section 192, subdivision (e). The cited subdivision of section 192 does not exist. The rest of section 192 defines the crime of manslaughter, and is not relevant to this case. Apparently the trial court misspoke and intended to refer to section 190, subdivision (e). Our discussion is based on that assumption.

to reduce a sentence, and that a person sentenced for murder must serve the full length of his or her minimum term—did not go into effect until *after* the commission of the crime in this case on May 16, 1998. The version of section 190 still in effect in May 1998 at the time the murder in this case occurred actually read, in pertinent part, as follows: "Except as provided in subdivision (b), Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 *shall apply* to reduce any minimum term of 15, 20, or 25 years in the state prison imposed pursuant to this section, but the person shall not *otherwise* be released on parole prior to that time." (Former § 190, subd. (a), italics added; Stats. 1987, ch. 1006, § 1, p. 3367, (Prop. 67), approved June 7, 1988; Stats. 1993, ch. 609, § 3, p. 3266, (Prop. 179), approved June 7, 1994.)[7] Consequently, whatever limitations on presentence conduct credits are contained in the current version of section 190, subdivision (e), these did not became operative until June 3, 1998, upon the passage of Proposition 222 at the June 2, 1998, Primary Election. They cannot be applied to the present case involving a murder which took place on May 16, 1998, prior to the effective date of that statute. (§ 3; U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9; *Weaver v. Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960, 965-966, 67 L.Ed.2d 17]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287-294 [279 Cal.Rptr. 592, 807 P.2d 434].)[8]

---

[7]The "subdivision (b)" referred to in the quoted section of former section 190, subdivision (a) set forth the punishment for persons found guilty of second degree murder of a peace officer engaged in the performance of his or her duties, and was clearly not applicable here.

In a footnote to his reply brief, appellant states that in his opening brief he had "mistakenly" identified former section 190, subdivision (a) as the provision applicable to this case; and he instead now cites former section 190, subdivision (c) as the applicable provision. Appellant was right the first time. Former section 190, subdivision (a) dealt with the punishment for *both* first degree murder (in the first paragraph) and second degree murder (in the second paragraph). The relevant portion of former section 190, subdivision (a) was the third paragraph quoted above, which applied to *both* first and second degree murder convictions. Former section 190, subdivision (c), provided a punishment of 20 years to life for second degree murder "perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury." In language closely similar to that of section 190, subdivision (a), subdivision (c) went on to state that "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 *shall apply* to reduce any minimum term of 20 years in the state prison when the person is guilty of murder in the second degree and is subject to this subdivision, but the person shall not otherwise be released on parole prior to that time." (Stats. 1993, ch. 609, § 3, p. 3266, italics added.) Thus, whichever subdivision of former section 190 applied to appellant's offense, in either case the statute in effect provided that conduct credits *were* available to reduce his sentence.

[8]Section 3 states: "No part of [this Penal Code] is retroactive, unless expressly so declared."

Respondent avers that, "[a]s the People understand it," the language of former section 190 relied upon by appellant "was part of a Penal Code section 190 which was never implemented," and which "would have only gone into effect had the current edition of section 190 (an edition with the exact subdivision (e) as the May 1998 edition) not been approved by the

Respondent contends that the trial court was justified in its refusal to award appellant any applicable presentencing conduct credits by the language of a separate provision, section 2933.2, subdivision (a). That statute provides that "[n]otwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933." However, as respondent fails to point out, section 2933.2, subdivision (d) also states: "This section shall only apply to murder that is committed on or after the date on which this section *becomes operative.*" (Italics added.) Like the current version of section 190, section 2933.2 was enacted by the Legislature in 1996, but required submission to the voters. Thus, it did not actually become effective until June 3, 1998, after the approval by the electorate of the current language of section 190, subdivision (e) as part of Proposition 222 in the Primary Election of June 2, 1998. (Stats. 1996, ch. 598, §§ 1, 3, 5; Stats. 1997, ch. 413, §§ 1, 3.) In other words, neither current section 190, subdivision (e), nor section 2933.2, was in effect at the time of appellant's crimes, and neither statute can be used to justify a denial of presentence conduct credit to him in this case.

Accordingly, the case must be remanded with directions to the trial court to calculate and award appellant appropriate presentence conduct credits in accordance with the sentencing laws in effect in May 1998, prior to the passage of Proposition 222 in June 1998.[9]

---

voters in June 1998." Unfortunately, respondent is wrong. Respondent's confusion on this point is understandable, however. The ultimate operative effect of the competing amendments to section 190 awaiting voter approval between 1996 and 2000 is so confusing as almost to defy analysis. (See 47A West's Ann. Pen. Code (1999 ed.) § 190, pp. 177-188 & (2001 supp.) pp. 17-18.)

Reference to a 1998 edition of the Penal Code clarifies the situation. The language of the statute actually in effect in May 1998 was that enacted by the Legislature in 1993, and approved by the voters on June 7, 1994, as Proposition 179. (Stats. 1993, ch. 609, § 3, p. 3266 (Prop. 179), eff. June 8, 1994; see Deering's Ann. Pen. Code. (2001 supp.) § 190, pp. 37-39.) As seen, this language was subsequently changed to bar the application of credits to convicted murderers by amendments enacted in 1997 but not effective until approval by the voters at the election of June 2, 1998, *after* the date appellant committed the offenses at issue in this case. (Stats. 1997, ch. 413, § 1 (Prop. 222), eff. June 3, 1998.) The provisions to which respondent apparently refers were actually part of amendments to section 190 enacted by the Legislature in 1998, but not effective until *March 8, 2000,* after their approval by the voters as part of Proposition 19 at the primary election of March 7, 2000. (Stats. 1998, ch. 760, §§ 6, 11, 12; see Deering's Ann. Pen. Code, *supra,* § 190, pp. 37-39; 47A West's Ann. Pen. Code, *supra,* § 190, pp. 177-188, & (2001 supp.) pp. 17-18.)

[9] In ordering a remand for this purpose, we intimate no opinion on the question whether appellant is actually *entitled* to an award of any presentence conduct credit, or if so, how much. We simply hold that the trial court erred in citing the specific statutory basis of section 190, subdivision (e) for denying such an award of presentence credit.

## V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI. Disposition

The abstract of judgment is ordered modified to strike the two-year enhancement imposed pursuant to former section 186.22, subdivision (b)(1), and to order that appellant not be paroled until he has served a minimum of 15 calendar years on his second degree murder conviction. The cause is remanded for the calculation and award of presentence conduct credit in accordance with the law in effect at the time of the offenses. In all other respects, the judgment is affirmed.

Corrigan, J., and Parrilli, J., concurred.

On August 24, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 31, 2001.

---

*See footnote, *ante*, page 1308.