Filed 4/1/14  P. v. Conners CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ENOCH CONNERS,<br><br>    Defendant and Appellant. | B247491<br><br>(Los Angeles County Super. Ct. No. BA404162) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant Enoch Conners of two counts of first degree burglary (Pen. Code § 459)[1] (counts 1 and 2) and six counts of misdemeanor resisting arrest (§ 148, subd. (a)(1)) (counts 4-9). He was found not guilty of first degree burglary (§ 459) in count 3.

The trial court sentenced defendant to seven years four months in state prison, plus two years in county jail, consisting of the upper term of six years in count 1, a consecutive term of sixteen months in count 2 (one-third the mid-term), consecutive terms of one year in county jail on counts 4 and 6, and concurrent terms of one year in county jail on counts 5, 7, 8, and 9. Defendant was awarded 603 presentence custody credits and 90 days of conduct credit.

Defendant contends that five of his six sentences for misdemeanor resisting arrest must be stayed under section 654, and the trial court erred in its calculation of presentence custody credits and conduct credits.

We affirm.

## FACTS

Defendant burglarized the homes of Ryan Glenn and Gina Rudnick on the morning of June 3, 2011.[2] Glenn confronted defendant and observed him driving away in a late model, copper-colored BMW coupe that was parked across the street from his house. Glenn reported the crime, described the vehicle, and provided police with a license plate number that matched defendant's, except that two numbers were transposed. Rudnick also noticed the BMW after realizing that someone had forcibly entered her house, and she reported the incident to the police.

---

[1]   All further statutory references are to the Penal Code unless otherwise specified.

[2]   Defendant does not challenge the burglary convictions, nor does he argue that there is insufficient evidence to support the convictions for misdemeanor resisting arrest. We summarize the facts viewing the evidence in the light most favorable to the judgment.

Officer Jason Perez located the BMW across the street from Rudnick's residence. He recovered a pink bag from the front seat that contained jewelry and other items taken from Glenn's home.

The police conducted a perimeter search in the area around Rudnick's home and observed defendant standing next to bags in front of another residence. Officer Andres Peters made eye contact with defendant, who immediately fled, evading arrest. The perimeter search lasted several hours and involved multiple units and air support, but was unsuccessful.

After the perimeter search ended, Officer Michael Delery and his partner, Officer Aride, were returning to their station in a marked squad car when Officer Delery saw defendant walking out of a driveway two houses north of Rudnick's home. Officer Delery accelerated toward defendant, who noticed him and began to run. Officer Delery parked the vehicle, and Officer Aride, who was in uniform, exited the vehicle and began to pursue defendant on foot. He yelled for defendant to stop. Defendant escaped over a fence just before Officer Delery parked the car and caught up to Officer Aride.

Police then conducted a second perimeter search. Several K-9 units were deployed. Defendant was issued a warning over a helicopter P.A. system that dogs were being used, and if he refused to surrender, the dogs would be unleashed and could harm him. K-9 Officer Jeff Miller and his dog Nico eventually located defendant, who had forcibly entered another residence on Rudnick's street. Officer Miller could see defendant moving around inside the house. Several officers entered the house and yelled for defendant to surrender, but he did not comply. They were eventually able to determine that he was hiding in the basement.

Sergeant Sola, who led the search after the K-9 team located defendant, repeatedly ordered defendant to surrender, informing him the officers would release "clear out" gas and use a Taser if he resisted. Defendant continued to resist arrest. Officers released the "clear out" gas and defendant continued to evade them, moving throughout the basement and attempting to breathe through different air vents. Officer Fitzsimmons deployed a Taser against defendant. Defendant still refused to comply with the officers' orders and

warnings, so Officer Roca tased defendant. Finally, defendant was apprehended and taken into custody, after being tased a third time.

<h1 style="text-align:center">DISCUSSION</h1>

**Imposition of Separate Sentences for Misdemeanor Resisting Arrest Convictions**

Section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "In *Neal v. State of California* (1960) 55 Cal.2d 11, this court construed the statute broadly: '"Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." [Citation.] [¶] Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Id*. at p. 19, italics added.)" (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) "'If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citation.]" (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240 (*Hairston*).)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any

substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 (*Hutchins*).) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) "'"We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" [Citation.]' (*Hutchins*, *supra*, . . . at pp. 1312-1313.)" (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626-627.)

Defendant was convicted of six counts of misdemeanor resisting arrest with respect to six different officers: Delery, Aride, Miller, Sola, Fitzsimmons, and Roca. At sentencing, the trial court noted defendant could be sentenced separately for each of the offenses, implicitly finding each offense involved a separate intent: "As far as the 148s, they can be punished separately pursuant to . . . section 148, subdivision (a) and [*Hairston, supra,* 174 Cal.App.4th] 231." Defendant contends the court was statutorily required to stay the terms for five of his six misdemeanor resisting arrest convictions pursuant to section 654 because he engaged in an indivisible course of conduct and had a single intent to evade arrest.

In *Hairston*, *supra*, 174 Cal.App.4th at page 233, the defendant was convicted of one count of criminal threats enhanced for personal use of a handgun, and three counts of misdemeanor resisting arrest (§ 148, subd. (a)(1)) with respect to three separate officers. He was sentenced to three one-year terms in county jail to run concurrent with his term of thirteen years in prison. (*Ibid*.) The defendant first resisted arrest when a sheriff's deputy following his car activated the patrol car's lights. Although the deputy yelled for the defendant to stop, he ran around a building and disappeared. A second deputy arrived on the scene to assist and spotted the defendant running through an apartment complex and jumping over a wall. He exited his vehicle, identified himself, and ordered the defendant to put his hands over his head, but the defendant jumped back over the wall and ran through the complex, resisting arrest a second time. The defendant then ran in

the direction of a third deputy arriving on the scene in his vehicle. The deputy slammed on his brakes, got out of the car, and pointed a gun at the defendant, ordering him to stop. The defendant fled the third deputy as well. On appeal, he contended, as defendant here does, that he acted with the single objective of avoiding arrest by the officers. The appellate court held that punishment could be imposed for all three violations of section 148 because the "[d]efendant formed a new and independent intent with each officer he encountered." (*Id.* at p. 240.)

The same is true here. Defendant resisted arrest when he sighted Officer Delery in a marked squad car. He then evaded Officer Aride, who chased him on foot and ordered him to stop. Defendant was warned that search dogs would be used but did not surrender to Officer Miller and his canine, despite warnings from the P.A. system that the dog would be unleashed. Sergeant Sola warned defendant that officers would use "clear out" gas and a Taser if he resisted, but he did not give himself up. After the "clear out" gas was deployed, Officer Fitzsimmons tased defendant, and defendant still refused to comply. Nor did he comply when Officer Roca tased him a few minutes later. At each juncture, defendant had the opportunity to surrender himself and end the pursuit. He decided not to do so repeatedly, and that conduct renders him more culpable than a person resisting only one officer. Given the facts, we cannot conclude the trial court erred in imposing concurrent sentences.[3]

---

[3] We do not address defendant's argument that the multiple victim exception does not apply here. Under the multiple-victim exception to section 654, "even though a defendant entertains but a single principal objective during an indivisible course of conduct, he may be convicted and punished for each crime of violence committed against a different victim." (*People v. Ramos* (1982) 30 Cal.3d 553, 587, reversed on other grounds in *California v. Ramos* (1983) 463 U.S. 992.) In this case, defendant did not meet the threshold requirement of entertaining a single objective in an indivisible course of action, so it is unnecessary to decide whether the exception would apply.

6

**Calculation of Custody and Conduct Credits**

Defendant was awarded 603 days credit for presentence custody and 90 days of conduct credit for a total of 693 days. Defendant represents that he filed a postjudgment ex parte motion to correct fines and presentence custody credits on June 28, 2013, disputing the trial court's calculations. The purported motion was filed subsequent to the March 14, 2013 notice of appeal in the instant case, and any order denying the motion would have been made thereafter. A postjudgment order denying modification of the custody credits awarded is an appealable order. (*People v. Salazar* (1994) 29 Cal.App.4th 1550, 1557.) It does not appear defendant filed an appeal from the denial of his postjudgment motion for additional credits. We decline to reach the merits of the contention, as that issue is not properly before this court in this appeal.[4]

## DISPOSITION

The judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.                               MOSK, J.

---

[4]     We denied defendant's February 6, 2014 motion to augment the record on appeal to include the clerk's transcript of the trial court's proceedings on his ex parte motion to correct fines and presentence custody credits by separate order.