Filed 3/28/22  P. v. Hays CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Appellant,<br><br>v.<br><br>MIKE ANDREW HAYS,<br><br> Defendant and Respondent. | 2d Crim. No B303483<br>(Super. Ct. No. 2018008772)<br>(Ventura County) |

Mike Andrew Hays was convicted by a jury of battery with serious injury (Pen. Code, § 243, subd. (d)[1]), assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), and simple battery (§ 242).  The jury also found true a great bodily injury enhancement pursuant to section 12022.7, subdivision (a).

The trial court sentenced Hays to the low term of two years for assault with force likely to produce great bodily injury, plus a consecutive three years for the great bodily injury enhancement.

---

[1] All undesignated statutory references are to the Penal Code.

The court ordered concurrent sentences for the remaining counts, for a total term of five years. We affirm.

FACTS

*Count 3, Battery Against Dustin Rogers*

On December 28, 2017, Dustin Rogers was driving through his neighborhood behind a white car. Hays was driving behind them. Suddenly Hays drove very fast around the two cars.

Hays turned onto a street near where Rogers lives. Rogers followed him and took a picture of Hays's car. Hays walked down the driveway toward Rogers. Rogers took a picture of Hays and the house where Hays was parked.

Hays told Rogers, "I can't fucking believe you followed me." Rogers told him that he was on the board of the homeowners association and did not want people driving like that in the neighborhood.

Hays spit in Rogers's face and hit him in the jaw. Hays smelled of alcohol. Rogers said, "That's assault." Rogers, who was still in his truck, called 911. Hays punched the truck door. Rogers fled the scene.

The police arrived at Rogers's home. Rogers told them what happened, but said he did not want to press charges. Later Hays drove down Rogers's street. Rogers was outside putting something in his truck. Hays slowed down and said, "Now I know where you live. I'm in your life. Now you're dead."

*Count 1, Battery with Great Bodily Injury, and*
*Count 2, Assault with Force Likely to Produce*
*Great Bodily Injury, Against John Coole*

John Cooley was washing a car in his driveway. It was Saturday and a lot of children were around. Hays drove by going

2.

approximately 70 miles per hour in a 25-miles-per-hour residential zone.  Cooley yelled for Hays to slow down.

Hays turned around and drove by Cooley's house again, going very slowly.  Hays quickly accelerated to 70 miles per hour and had his middle finger out the window.  Cooley said, "Slow down, asshole."

Hays returned, parked six inches from the car Cooley was washing, and got out of his car.  Hays asked Cooley, "Have you ever had your fucking ass kicked by a vet?"  Cooley thought Hays was referring to a veterinarian.  Cooley said no.  Hays told Cooley he was about to.

As Hays walked toward Cooley, he had trouble keeping his balance.  Cooley thought Hays was intoxicated.  Cooley backed away.  Hays outweighed him by 75 pounds.  Cooley warned Hays that if he did anything he was going to jail.

Hays took a swing at Cooley but he ducked.  Hays slipped on the soapy water Cooley was using to wash his car.  Hays got up and grabbed Cooley's T-shirt, pulling him down.  Cooley hit his knees on the concrete, causing lacerations and abrasions.

Cooley got up and Hays went toward him again.  Cooley reached into Hays's car and took the keys.  Cooley believed Hays was intoxicated and did not want him driving because children were in the area.  Hays was enraged and told Cooley to give him the keys.  Cooley said he was calling the police.  Hays threatened to kill him.

Hays tried to pry open Cooley's hand to get the keys.  Then Hays spun him around causing Cooley's hand to hit a brick wall.  Cooley dropped the keys.  He had a broken finger and hand.

Hays grabbed the keys and told Cooley that if he ever saw him again, he would kill him. Hays got in his car and drove away.

Cooley went to the emergency room. He had a mark on his neck. The bone in Cooley's hand was reset. His hand was in a cast for more than two months. Cooley also had surgery on his arm. An eight-inch bracket with eight screws was needed.

DEFENSE

Hays testified in his own defense.

*Rogers*

Hays said he did not know Rogers before the incident. He said he was not speeding that day. Rogers followed him to his mother's house and began taking pictures with his phone. Hays wanted to scare Rogers away from his mother's house. He denied he spit on Rogers or hit him. Rogers rolled up his window and left.

*Cooley*

Hays drove past Cooley at the speed limit. He heard someone yell and turned around to see if there was a problem. As Hays drove by again, Cooley called him an asshole. Hays pulled up next to Cooley.

Cooley ran up to Hays's car and put his hands inside the passenger window. Cooley was screaming and his face was bright red. Hays thought that Cooley was under the influence of narcotics.

Hays got out of his car. When he got close, Cooley attacked him. Cooley wrestled him to the ground. Hays got up and got into his car. Cooley grabbed Hays's keys from the ignition. Hays could not leave.

4.

Hays got out of his car to get his keys. Hays grabbed Cooley by the neck and threw him to the ground. Cooley's hand hit the ground and the keys bounced out. Hays did not swing Cooley into a wall. Hays does not know how Cooley injured his hand.

The surgery on Cooley's arm was entirely elective to treat a preexisting degenerative condition.

## DISCUSSION

### I

### *Defense of Property Instruction*

Hays contends the trial court erred in failing to instruct on defense of property.

#### *(a) Requested Instruction*

Hays requested that the trial court instruct the jury, "A defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates felonious intent and is a defense to the use of force in such a taking." The court refused the instruction.

The proposed instruction was wrong. It tells the jury that the defendant's attempt to retrieve property he believes is his justifies the use of force without limit. The law is that the owner of property may only use such force as is reasonably necessary to protect his property. (*People v. Miller* (1946) 72 Cal.App.2d 602, 606.)

#### *(b) Sua Sponte Instruction*

Hays contends the trial court erred in failing to give a sua sponte instruction on defense of property.

Hays points out that defense of property was his defense. The trial court has a sua sponte duty to instruct on the defenses

5.

on which the defendant is relying. (*People v. Townsel* (2016) 63 Cal.4th 25, 58.)

We agree that the trial court should have instructed on Hays's theory of defense. But the error was harmless by any standard.

CALCRIM No. 3476 provides:

"The owner . . . of [personal] property may use reasonable force to protect that property from imminent harm. . . .

*"Reasonable force* means the amount of force that a reasonable person in the same situation would believe is necessary to protect the property from imminent harm.

"When deciding whether the defendant used reasonable force, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"The People have the burden of proving beyond a reasonable doubt that the defendant used more force than was reasonable to protect property from imminent harm. If the People have not met this burden, you must find the defendant not guilty of [the charged crimes]."

The jury did not believe Hays's testimony that Cooley was the aggressor. Rogers's testimony fully supported Cooley's testimony that Hays was the aggressor. Rogers's testimony also fully supported Cooley's testimony that Hays drove through the neighborhood at excessive speeds and appeared to be under the influence of alcohol.

It was Cooley who was privileged to take Hays's keys to prevent harm to others by preventing Cooley from driving at

excessive speeds in an intoxicated state. Hays was entirely unjustified in attacking Cooley to retrieve his keys.

Moreover, under almost any circumstances, the infliction of great bodily injury to retrieve car keys would be excessive. Hays presented no circumstances here that would justify the use of such force.

## II

### *Unanimity Instruction*

Hays contends the trial court erred in failing to give sua sponte a unanimity instruction.

Hays argues that Cooley attributed four separate injures to his confrontation with him, three of which the prosecution highlighted in opening and closing statement. Hays also claims the prosecutor described to the jury a number of acts that could constitute assault. Hays speculates that the jury may not have agreed on which acts constituted the assault or which injuries constituted great bodily injury.

A unanimity instruction is required where more than one separate and distinct crime is charged under a single count. (See, e.g., *People v. Sanchez* (2001) 94 Cal.App.4th 622, 634 [unanimity instruction required where two separate incidents of kicking dogs are charged under a single count of animal cruelty].) No unanimity instruction is required, however, where the alleged acts are so closely connected as to form part of one transaction. (*People v. Benavides* (2005) 35 Cal.4th 69, 98 [no unanimity instruction required where rape and sodomy took place within a very small window of time].)

Here the entire incident lasted only a matter of minutes. All the acts that comprised the assault were part of a single transaction. No unanimity instruction was required.

Moreover, Hays's argument amounts to nothing more than that there is a possibility the jury may have been divided as to the exact way Hays was guilty of the crime.  That possibility is not sufficient to require a unanimity instruction.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877-878.)

III

*Great Bodily Injury Instruction*

Hays contends the trial court erred in defining great bodily injury.

The trial court instructed with CALCRIM Nos. 875 and 3160.  Both instructions define great bodily injury as follows: "*Great bodily injury* means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."

Hays relies on *People v. Medellin* (2020) 45 Cal.App.5th 519.  There the majority of the court over a vigorous dissent held the definition of great bodily injury in CALCRIM Nos. 875 and 3160 was misleading.  The majority concluded the use of the disjunctive in the phrase " 'minor or moderate harm' " could lead the jury to believe that either greater than minor harm or greater than moderate harm is sufficient.  (*Medellin*, at p. 534.)

The majority in *Medellin* was criticized by *People v. Sandoval* (2020) 50 Cal.App.5th 357.  *Sandoval* pointed out that the majority in *Medellin* picked a phrase out of context, and the interpretation given to the instruction by the majority does not make sense legally or grammatically, particularly when the phrase is preceded by the explanation that the injury must be significant or substantial.  (*Sandoval*, at p. 361.)

We agree with *Sandoval*.  The phrase "great bodily injury" is composed of ordinary English words understood by any

8.

reasonable juror even without an instruction. The definition of great bodily injury included in CALCRIM Nos. 875 and 3160 is simply a statement of the obvious. No reasonable juror could have been misled.

Hays argues that our Supreme Court rendered the definition of great bodily injury unconstitutionally vague in *People v. Escobar* (1992) 3 Cal.4th 740. Hays cites *Escobar*: " ' "Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it . . . ." ' " (*Id.* at p. 750.)

We see nothing wrong with our Supreme Court's pronouncement. Even if we did, we are powerless to change it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

IV

*Flight Instruction*

Hays contends the trial court erred in giving CALCRIM No. 372, the instruction on flight.

CALCRIM No. 372 provides: "If the defendant fled [immediately after the crime was committed], that conduct may show that [he] was aware of [his] guilt. If you conclude that the defendant fled . . . , it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled . . . cannot prove guilt by itself."

The flight instruction is proper where the evidence shows the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) That

the defendant left the scene is not alone sufficient to support a flight instruction.  (*Ibid.*)

Hays argues the instruction was not supported by substantial evidence.  But Cooley took Hays's keys because he believed Hays was intoxicated and there were childen present.  Cooley told Hays he was calling the police to "let them figure all of this out."

Instead of waiting for the police to arrive, Hays attacked Cooley, grabbed his keys, and fled the scene.  There is more than ample evidence to support a flight instruction.

Hays argues that the instruction does not state that flight requires more than mere departure or movement.  But that is implicit in the instruction's use of the phrase "fled or tried to flee."  When a person says he "fled the scene," he means more than that he merely departed or moved away from it.

In any event, if there were error, it was harmless.  Hays's flight aside, there was overwhelming evidence of his guilt.  As we have pointed out, Rogers's testimony supported Cooley.

V

*Alleged Prosecutorial Misconduct*

Hays contends the prosecutor committed misconduct in argument to the jury.

*(a)  Unanswered Questions*

Hays contends the prosecutor committed misconduct in telling the jury that it could not consider the prosecution's failure to answer unanswered questions.

The prosecutor told the jury:  "The law tells you that you cannot consider all of the things . . . , any thoughts of passion or public opinion, public feeling, sentiment, sympathy for the defendant or for the victim – those are thoughts that you have to

keep out of your mind when making the determination –
speculation. Those are things that you heard – that you might
know outside of this courtroom or the unanswered questions that
you may have. You can't base your decision based on what those
answers could be. You have to only consider the evidence that
you heard in this case. Penalty and punishment and prejudice.
So all of those things have to be kept out of your mind when
making your decision."

Hays cites *People v. Centeno* (2014) 60 Cal.4th 659, 670, for
the proposition that the jury "may not go beyond the record to
supply facts that have not been proved." (Italics omitted.) That
is all the prosecutor was urging here in telling the jury not to
speculate about the answer to unanswered questions. In telling
the jury not to speculate, the prosecutor was correctly stating the
law. (*People v. Hines* (1997) 15 Cal.4th 997, 1037 [court should
have told the jury not to speculate about matters on which there
was no evidence].) The prosecutor did not tell the jury it could
not consider unanswered questions in determining whether the
prosecution carried its burden of proof. The prosecutor's
statement was made in the context of urging the jury to decide
the matter on the evidence, not passion, prejudice, or speculation.
In assessing a claim of prosecutorial misconduct, we do not
isolate a phrase from its context and assign it the most damaging
meaning possible. (*People v. Gonzalez* (1990) 51 Cal.3d 1179,
1224, fn. 21.)

### (b)  Reference to Facts Not in Evidence

Hays contends the prosecutor committed misconduct by
referencing facts not in evidence.

11.

In closing, Hays's counsel argued that the prosecution was trying to hide something by not producing Cooley's medical records. In rebuttal, the prosecutor told the jury:

"Now, I am the only person in this case that has any sort of obligation to present evidence, but the defense has all the evidence that I have. So if they wanted you to hear the 911 call, they could have played that . . . .

"And in regards to the medical records, they have the same medical records that I have. They could have presented you records of the surgery if they wanted to. They've presented you with certain excerpts of the medical records. I presented the excerpts of the medical records that I thought were appropriate."

Hays argues there was no evidence the 911 call was recorded, retained, or produced to the defense. Hays also argues the prosecution was aware that Cooley's surgery records were not available.

But the prosecution's argument was that it was not trying to hide anything because the defense had the same evidence it had. That a recording of the 911 call or the surgical records did not exist or were unavailable is beside the point. The prosecution's point was that it was not hiding anything.

Contrary to Hays's argument, the prosecutor was not suggesting that the defense had the burden of proof. The prosecutor acknowledged that she is the only person who has the obligation to produce evidence. She was simply replying to Hays's argument that the prosecution was trying to hide something.

# VI

## *Sentencing Discretion*

Hays contends the trial court failed to recognize its discretion to strike a sentence enhancement.

The trial court sentenced Hays to the low term of two years for the assault and an additional three years pursuant to section 12022.7, subdivision (a). Hays argues the court did not know it had the discretion to dismiss the enhancement in the interest of justice. (§ 1385.)

Section 12022.7, subdivision (a) provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

The use of the word "shall" shows the sentence enhancement is mandatory. Hays points to nothing in the record to show the trial court failed to recognize it had the discretion to dismiss the enhancement in the interest of justice. If the record is silent, it is presumed the trial court understood the scope of its discretion. (*People v. Lee* (2017) 16 Cal.App.5th 861, 867.)

# VII

## *Concurrent Sentences*

Hays contends the trial court erred in imposing concurrent sentences, instead of staying one of the sentences under section 654.

The trial court selected assault with force likely to produce great bodily injury as the principal count (count 2) and sentenced Hays to the low term of two years. The court sentenced Hays to the low term of two years on battery with serious injury (count 1) to run concurrently. Hays argues that because both counts arose

from the same act, the sentence on count 1 should have been stayed pursuant to section 654.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Section 654 limits punishment for multiple convictions for an act or course of conduct in which the defendant maintained one principal objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) If, however, "[the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Ibid.*) Whether section 654 applies is a question of fact for the trial court, and the court's determination will be upheld on appeal if there is any substantial evidence to support it. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

Here the trial court could reasonably conclude that Hays's assault against Cooley had two different objectives. Hays's initial assault against Cooley had the objective of punishing Cooley. After Cooley justifiably removed the keys from Hays's truck, Hays' assault had the different objective of regaining possession of his keys. Section 654 does not apply.

## VIII
### *Cumulative Error*

Hays contends cumulative error requires reversal. But the evidence against him was strong and the trial was fundamentally fair. No reversal is required.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

Ryan J. Wright, Benjamin F. Coats, Judges

Superior Court County of Ventura

_____

Tarik S. Adlai for Defendant and Appellant; Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.