Filed 5/8/23  P. v. Thompson CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROMONDIS TYRON THOMPSON, JR.,<br><br>    Defendant and Appellant. | A163964<br><br>(Lake County Super. Ct. Nos. CR958995, CR959006) |

Defendant Romondis Tyron Thompson, Jr., was found guilty of felony evasion of a peace officer while driving in willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a); count one) and two counts of resisting, delaying, or obstructing peace officers in the discharge of their duties (Pen. Code § 148, subd. (a)(1); counts four and five).[1] He was sentenced to an aggregate prison term of four years, comprised of the middle term of two years on count one (doubled for a prior strike), and two 180-day terms on counts four and five (both concurrent to count one).

On appeal, defendant contends the sentences were in violation of section 654 because he was given multiple punishments for an indivisible course of conduct of evading apprehension by the police.  We conclude

---

[1]    Further unspecified statutory references are to the Penal Code.

1

substantial evidence supports the trial court's implied finding that section 654 was inapplicable because defendant's sentences were based on separate and divisible acts. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2020, the Clearlake Police Department investigated defendant on several matters, including the reported theft of a 1997 Dodge pickup truck. Clearlake Police Officers Nathan Williams and Chris Kelleher were dispatched to a residential address where defendant was believed to be when they saw the Dodge truck driving by. The officers pursued the truck as it drove on Sonoma Avenue, a partially paved and dirt road in a residential neighborhood. Williams turned on the emergency lights of his vehicle and commenced a traffic stop of the Dodge truck as another police vehicle drove in front of the Dodge. As Williams and Kelleher exited their vehicle and approached, the Dodge truck pulled to the right and drove away.

Officers Williams and Kelleher ran back to their vehicle and pursued the Dodge, which was driving "in the middle of the roadway" at approximately 45 miles per hour in a 25-mile-per-hour zone. The truck was not driving at a safe speed as it drove on the dirt portion of Sonoma Avenue, and it was "creat[ing] dust that [made] it very difficult for other vehicles to be seen." The pursuit ended when defendant tried to make a left turn and crashed against a dirt hillside. Williams' vehicle lost traction and rear-ended the Dodge truck.

Defendant then exited the truck and fled on foot. He went to "the top of an incline that led to heavy brush and continued . . . through the brush." Officers Kelleher and Williams pursued defendant and fired their department-issued tasers at him but missed. They eventually caught defendant and placed him in handcuffs.

2

Defendant was transported to a hospital, where he somehow managed to get free of his handcuffs. He ran out of the hospital room, saying, "bye, Kelleher" as he left. Defendant fled to the ambulance bay but collided with a wall and was soon apprehended.

A petition for revocation of post release community supervision (PRCS) was filed in Lake County Superior Court alleging that defendant committed several new crimes while on release, including felony vehicle theft (Veh. Code, § 10851, subd. (a)) and possession of stolen property (§ 496).[2]

In April 2021, defendant was charged by information with felony evasion of a peace officer while driving in willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a); count one); felony vehicle theft (Veh. Code, § 10851, subd. (a); count two); felony receipt of a stolen vehicle (§ 496d, subd. (a); count three); misdemeanor resisting arrest as to Officer Kelleher (§ 148, subd. (a)(1); count four); misdemeanor resisting arrest as to Officer Williams (§ 148, subd. (a)(1); count five); and battery on a hospital security guard (§ 243, subd. (b); count six). As to counts one, two, and three, the information alleged that defendant previously suffered a prior felony strike conviction (§§ 667, subd. (d), 1170.12).

Before trial, the prosecution dismissed counts two, three, and six.

Defendant waived his right to a jury trial, and a single bench trial was held on both the PRCS petition and the criminal information. The trial court heard testimony from several witnesses, including defendant and Officers

---

[2] The petition further alleged that defendant committed rape by force (§ 261, subd. (a)(2)), oral copulation by force (§ 287, subd. (c)(2)), false imprisonment (§ 236), assault with a deadly weapon (§ 245, subd. (a)(1)), sexual penetration by force (§ 289, subd. (a)(1)(A)), misdemeanor flight from a peace officer (Veh. Code, § 2800.1), violation of PRCS (§ 3452), and misdemeanor resisting arrest (§ 148, subd. (a)).

Williams and Kelleher. In finding defendant guilty on counts one, four, and five, the court observed, defendant "knew they were police officers, he knew they were doing their job, and he . . . resisted, he delayed, he obstructed multiple times. He ran on foot, he tried to escape at the hospital." The court also found true the prior strike allegation.

At the sentencing hearing, the trial court sentenced defendant to a total of four years in prison, as follows: the middle term of two years on count one, doubled for the prior strike; a term of 180 days on count four, concurrent to count one; a second term of 180 days on count five, concurrent to count one; and a third term of 180 days as to the PRCS petition, concurrent to count one.

Defendant timely appealed.

### DISCUSSION

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294; § 654, subd. (a) [in no case shall act or omission be punished under more than one provision of law].) "Although section 654 literally applies only where multiple statutory violations arise out of a single 'act or omission,' it has also long been applied to cases where a 'course of conduct' violates several statutes. [Citations.] A 'course of conduct' may be considered a single act within the meaning of section 654 and therefore be punishable only once, or it may constitute a 'divisible transaction' which may be punished under more than one statute." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252 (*Kwok*).)

" 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not

4

for more than one.' " (*People v. Beamon* (1973) 8 Cal.3d 625, 637, italics omitted (*Beamon*).) However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Id.* at p. 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 (*Gaio*).) "Thus, a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654." (*Kwok, supra*, 63 Cal.App.4th at p. 1253.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 (*Hutchins*).) In reviewing for substantial evidence, we view the entire record in the light most favorable to the judgment and presume in support of the judgment every fact that can reasonably be deduced from the record, and we do not reweigh conflicting evidence or reevaluate witness credibility. (*People v. Skiff* (2021) 59 Cal.App.5th 571, 579.) "In the absence of an explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed, i.e., either applying section 654 or not applying it." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1045.)

Viewing the record before us in the light most favorable to the judgment, we conclude substantial evidence supports the trial court's implied

finding that defendant's sentences were based on separate and divisible acts. That is, one could reasonably conclude from the record that defendant's first act of reckless driving to evade the police began with the vehicle pursuit on Sonoma Avenue and ended when defendant crashed the Dodge truck into a dirt hill. He then engaged in a separate and distinct act of fleeing the officers on foot through the nearby brush. Then, after a further elapse of time, defendant again attempted to flee law enforcement when he broke free of his handcuffs and ran from his hospital room. Although the three acts shared the same objective of evading apprehension, they were sufficiently divisible in time and conduct to support multiple sentences. (*Beamon, supra*, 8 Cal.3d at p. 639, fn. 11.)

Defendant maintains there was too little time between the vehicle and foot chases for them to constitute divisible acts. But the evidence was in conflict on this question, and we defer to the trial court's implied finding that defendant had a sufficient opportunity after the vehicle crash to reflect and to renew his intent to flee, this time on foot. (*Gaio, supra*, 81 Cal.App.4th at p. 935; see *People v. Harrison* (1989) 48 Cal.3d 321, 335 [temporal proximity of events does not mean they were part of one indivisible course of conduct].) As Williams testified, the Dodge truck came to a complete stop after crashing into the dirt hill. At that point in time, the vehicle chase had ended, and defendant could have remained inside the truck for the police to approach. Instead, he decided to exit the vehicle and flee on foot through a residential neighborhood, "thereby aggravating the violation of public security or policy already undertaken" by his reckless driving. (*Gaio*, at p. 935.)

Moreover, the trial court could reasonably credit defendant's own testimony that he decided to stop driving and instead run away on foot because he had "been to the [penitentiary] for felony evasions before" and he

6

"[knew] the seriousness of it." That is, the court could reasonably have concluded that defendant committed a new and separate crime after reflecting on the seriousness of his reckless driving and renewing his resolve to escape despite the setback of the car crash. (See *People v. Louie* (2012) 203 Cal.App.4th 388, 399 ["[i]f the separation in time afforded [a] defendant[] an opportunity to reflect and to renew [his or her] intent before committing the next crime, a new and separate crime is committed"].) Given the "broad latitude" vested in the trial court to determine the applicability of section 654 (*Hutchins, supra,* 90 Cal.App.4th at p. 1312), we conclude the court reasonably found that the vehicle and foot chases were separate and divisible acts, each subject to punishment.

Defendant next contends that separate punishments on counts four and five violated section 654 because "the hospital incident involved the same officers and was an indivisible course of conduct." To the extent this argument assumes that the sentences on counts four and five were both based on defendant's flight attempt at the hospital, we are unpersuaded. Viewing the record in the light most favorable to the judgment, we conclude the trial court appears to have attributed one of these counts to defendant's conduct of fleeing on foot after the vehicle chase, and the other to his attempted escape from the hospital. Because the two acts of resisting arrest were separate and divisible acts, section 654 does not prohibit sentences for both. (*Beamon, supra,* 8 Cal.3d at p. 639, fn. 11.)

Finally, defendant argues the case should be remanded for resentencing in light of Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 441), which recently amended section 654 to no longer require that trial courts impose the longest possible term of imprisonment when multiple offenses are based on the same act or omission. (*People v. White* (2022) 86

Cal.App.5th 1229, 1236.)  As the Attorney General points out, however, this argument presumes that section 654 applies to the facts of the instant case. Because we have concluded that the trial court did not impose multiple punishments for the same act or indivisible course of conduct, section 654 is inapplicable and there is no basis for remanding in light of Assembly Bill No. 518.

**DISPOSITION**

The judgment is affirmed.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Petrou, J.

*People v. Thompson* (A163964)

8