Filed 1/7/21  P. v. Hart CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072352 |
| v. | (Super.Ct.No. RIF1603242) |
| TIMOTHY LYNN HART, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.  Modified and affirmed with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant, Timothy Hart, appeals from the judgment entered following jury convictions for assault with a deadly weapon against Linda F. (Pen. Code, § 245, subd. (a)(1)[1]; count 1); uttering a criminal threat to Linda (§ 422; count 2); and two counts of attempting to make a criminal threat to two sheriff's deputies (§§ 422, 664; counts 3 & 4). Defendant's prior conviction allegations were bifurcated from the jury trial of the charged crimes. Defendant admitted the prior conviction allegations were true. The trial court struck punishment for the prior convictions and sentenced defendant to an aggregate indeterminate prison term of 100 years to life.

Defendant contends the trial court abused its discretion and violated his constitutional rights to a fair trial and due process by allowing evidence that in 2009 defendant committed a criminal threat offense. Defendant also contends the trial court erred in imposing consecutive sentences on counts 1 (assault with a deadly weapon) and 2 (uttering a criminal threat) in violation of section 654. Defendant further asserts that under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) the $300 restitution fine (§ 1202.4, subd. (b)) must be vacated because the trial court imposed the fine without finding defendant had the ability to pay the fine, in violation of defendant's due process

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

rights. In addition, defendant requests this court to review in camera the sealed transcript of the trial court *Pitchess*[2] discovery proceedings.

We have reviewed in camera the sealed *Pitchess* record submitted to this court and conclude the trial court did not abuse its discretion in not releasing any of Deputy Rhodes's confidential records. We further conclude the trial court erred in imposing consecutive sentences on counts 1 and 2, in violation of section 654. The judgment is therefore modified by staying defendant's sentence on count 2 under section 654. In addition, the $300 restitution fine is ordered stayed. The judgment is affirmed in all other respects.

## II.

## FACTS

On July 3, 2016, Linda had been homeless for a few days, after she was kicked out of her mother's home. Linda turned 20 years old that month. She had been using methamphetamine and was sleeping on a couch behind the Eldorado Sports Club (Club). Linda testified she met defendant two or three days before the charged offenses.

During the evening of July 3, 2016, at around 8:00 p.m., Linda and defendant went to the liquor store to buy vodka, and then sat on the couch behind the Club and drank the vodka. Linda testified she had one drink and defendant drank the rest of the vodka. After defendant started drinking, defendant acted irrationally and the two began arguing. Defendant told Linda he was angry because he did not have any family. He said all of his

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

3

family had committed suicide. All of a sudden, defendant pulled a knife out of his pocket, put it to his throat, and said he was going to kill himself. Linda was sitting down and defendant was standing about three feet from her.

Linda told defendant to put down the knife. Defendant put the knife near Linda's leg and throat, while standing in front of her, and told her he was going to kill her and her family. Linda testified that it happened "all in the same incident." Linda was scared when defendant pulled his knife on her and threatened to kill her. She ran away to get help. The security guard at the Club called the police.

Sheriff's Deputy Rhodes testified he reported to the Club. He testified that Linda appeared scared. Sheriff's Deputy Santisteven located defendant and, when Sheriff's Deputy Hephner arrived at 12:53 a.m., on July 4, 2016, deputies Santisteven and Hephner placed defendant in the back of Hephner's patrol car. While Hephner transported defendant to the police station, defendant kicked the back window, yelled, and said he was going to kill the deputies who were involved and their families, including Hephner and his family. Defendant further stated that he was part of a gang, who would find Hephner and his family.

At the police station, defendant continued to threaten Hephner. Deputy Rhodes, who was at the police station, turned on his tape recorder when he entered the booking room and filled out paperwork for defendant. During the recording, defendant stated he was a gang member in the most hated gang in the country. He further stated that, when his handcuffs were removed, he was gong to "wrestle them [f---ers]," and told Rhodes,

4

"I'm just tellin' you man-man, one of them [f---ers] are gettin' stabbed tonight. I'm gonna grab a pen or whatever's closest to me, I'm gonna stab the mother [f---ers] tonight, you're gonna have to kill me . . . kill the mother [f---er], I'm killin' somebody." He continued, "I'm callin' my homeboys, I'm callin' my home girls and I'm gonna sit around (unintelligible). I can guarantee that, I know where her family lives. I know where she lives . . ." Defendant told Hephner, who was present during the recording, that he should take his vest off and remove his gun. Defendant said to Hephner, "I swear to God, I'll [f---] you up." "Come here you bitch."

During the trial, the parties stipulated to the following facts. On July 4, 2016, Sergeant Santisteven assisted in investigating the case. He located defendant within 10 minutes of Deputy Rhodes arriving on the crime scene. Sergeant Santisteven found a pocketknife in defendant's pants pocket. The parties also stipulated that in 2009, defendant threatened to kill a separate, unrelated victim.

III.

ADMISSIBILITY OF UNCHARGED PRIOR OFFENSE

Defendant contends the trial court abused its discretion and violated his constitutional rights by allowing evidence he committed a prior 2009 criminal threat offense. The prosecution introduced stipulated evidence of the prior offense to prove the specific intent element required to prove the crime of uttering a criminal threat.

5

A. *Procedural Background*

Before defendant's trial, the People filed a motion requesting admissibility of evidence of a prior uncharged offense. The People stated in their motion that in 2009, defendant threatened to kill a young woman who had run away from home and had been living in a tent with defendant in a field. One evening, defendant angrily entered the tent, hogtied the woman, and told her, "'You better hope you get out, cause if not, I will kill and bury you in this field.'" Defendant then covered the woman with a blanket and left.

The People argued in their motion that evidence of the prior 2009 criminal threat offense was admissible under Evidence Code section 1101 to prove defendant had the same intent when he committed the charged criminal threat crime against Linda. During the pre-trial hearing on the People's motion, the trial court noted it had discussed with the parties in chambers the court's thoughts about the matter. The court further stated that evidence of the prior 2009 criminal threat offense was being offered under Evidence Code section 1101, subdivision (b), to show defendant had substantially the same intent when he committed the charged criminal threat crime against Linda. The court concluded, based on the prior incident's similar circumstances and conditions, evidence of the 2009 criminal threat offense was relevant to defendant's intent and would assist the jury under Evidence Code section 1101.

In response, the prosecutor suggested sanitizing the evidence, as suggested by the court, by stipulating to limited facts that defendant had previously threatened to kill someone and intended that the threat be taken seriously. The prosecutor stated that the

purpose of introducing evidence of the 2009 criminal threat offense was to show that, in the instant case, defendant had the same intent to convey a criminal threat to Linda and intended that the threat be taken seriously by her.

Defense counsel stated that, if the court was going to allow evidence of the prior 2009 criminal threat offense, defendant would stipulate to the proposed limited facts of the prior incident, because it would be the "safest way for . . . defendant to deal with that statement."

During the trial, at the end of the prosecution's case, the prosecutor submitted a stipulation of facts, which was read to the jury, stating that defendant "threatened to kill a separate unrelated victim in 2009. The defendant Mr. Hart acted with the intent that his statement be understood as a threat during this act in 2009."

B. *Forfeiture*

The People argue that defendant forfeited his objection to evidence of his 2009 criminal threat offense by failing to object to admission of the evidence at trial. We disagree.

The People rely on "[t]he general rule . . . that 'when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal . . . .'" (*People v. Brown* (2003) 31 Cal.4th 518, 547.) But "a sufficiently definite and express ruling on a motion in limine may also serve to preserve a claim . . . ." (*Ibid.*; see *People v. Thompson* (2016) 1 Cal.5th 1043, 1108 (*Thompson*).) This latter exception is well

7

established and applies here.  Defendant raised his objection, the trial court ruled on it, and defendant raised the same issue on appeal.  (*Ibid*.)

Thus, although defendant stipulated to the court informing the jury of his 2009 criminal threat offense, he did not forfeit his objection to evidence of the 2009 offense, because he did not stipulate until after the trial court definitively ruled that evidence of the 2009 offense was admissible.  Under these circumstances, we conclude defendant preserved his objection to the admissibility of evidence of his 2009 criminal threats offense.  (*Thompson*, *supra*, 1 Cal.5th at p. 1108.)

C. *Law Applicable to Admissibility of Uncharged Prior Offenses*

"'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity.  [Citations.]  The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect.  [Citation.]  When reviewing the admission of evidence of other offenses, a court must consider:  (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant.  [Citation.]  Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded."  [Citation.]'  [Citation.]  '"We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence

under Evidence Code sections 1101 and 352." [Citation.]'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668; see *Thompson*, *supra*, 1 Cal.5th at p. 1114.)

Evidence Code section 1101, subdivision (a) provides, with exceptions not applicable here: "'[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, *or evidence of specific instances of his or her conduct*) is inadmissible when offered to prove his or her conduct on a specified occasion.' (Italics added.) The admission of such evidence may also be limited by Evidence Code section 352, which authorizes a trial court, in its discretion, to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Thompson*, *supra*, 1 Cal.5th at p. 1114.)

Evidence Code section 1101, subdivision (b), however, clarifies that the rule excluding character evidence ""does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition," such as identity, common plan or intent,' provided the charged and uncharged offenses are sufficiently similar to support a rational inference of those facts or of some other fact unrelated to the defendant's propensity to commit the charged offenses. [Citations.]" (*People v. Gutierrez* (2018) 20 Cal.App.5th 847, 859.)

The degree of similarity necessary to support admissibility of uncharged misconduct "depends on the purpose for which the evidence was presented." (*People v.*

9

*Jones* (2011) 51 Cal.4th 346, 371.) "The least degree of similarity between the uncharged act and the charged offense is required to support a rational inference of intent; a greater degree of similarity is required for common design or plan; the greatest degree of similarity is required for identity. [Citations.] 'In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'"'" (*People v. Gutierrez*, *supra*, at p. 859, quoting *People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "We review the trial court's determination of admissibility of evidence under Evidence Code sections 1101, subdivision (b), and 352 for abuse of discretion." (*People v. Gutierrez*, *supra*, at p. 860.)

D. *Analysis*

The prosecution sought to admit evidence of defendant's prior 2009 criminal threat offense to prove the requisite intent element of the crime of defendant uttering a criminal threat against Linda.

In order to prove the crime of uttering a criminal threat under section 422, "the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant *made the threat 'with the specific intent that the statement. . . is to be taken as a threat*, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was]

10

made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citations.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, italics added.)

The prosecution thus was required to prove that defendant made statements threatening Linda with the specific intent that the statements were to be taken as a threat. (§ 422.) Because specific intent is an element of the charged offenses of uttering a criminal threat against Linda, evidence of the prior 2009 criminal threat offense was substantially relevant to establishing that defendant had the same requisite intent when he threatened Linda in 2016. The specific intent in the prior incident and in the charged criminal threat offense was the same and occurred under similar circumstances. In both incidents, the defendant threatened to kill a young homeless women, while holding the women captive, in the 2009 incident by tying up the victim, and in the charged crime, by holding a knife to the woman's neck. In both offenses, defendant had a brief intimate relationship with the women and, after defendant threatened to kill the women, the women escaped and sought help.

We conclude the prior and charged criminal threats offenses are substantially similar, and there is a direct relationship between the prior offense and an element of the charged offense. Therefore, the stipulated statement that defendant threatened to kill a

11

separate unrelated victim in 2009, and acted with the intent that his statement be understood as a threat was admissible evidence under Evidence Code section 1101. (*People v. Daniels* (1991) 52 Cal.3d 815, 857; see *Thompson*, *supra*, 1 Cal.5th at pp. 1114-1115.)

Defendant argues the prior 2009 criminal threat offense was nevertheless not relevant because the sole issue in the instant case was whether defendant was too intoxicated to form the requisite intent. But a determination of intent would have been necessary if the jury rejected defendant's theory he was too intoxicated to form the requisite intent. The prosecution was entitled to rebut that evidence to show that, regardless of whether defendant was intoxicated, he was capable of forming the requisite intent and acted with intent his statement would be understood as a threat. Therefore, evidence of the prior 2009 criminal threat offense was admissible evidence relevant to the issue of intent. We thus conclude the trial court did not abuse its discretion, under either Evidence Code section 1101 or Evidence Code section 352, in admitting the stipulated evidence that defendant threatened to kill a separate unrelated victim in 2009, with the intent that his statement be understood as a threat.

We further conclude the probative value of the stipulated statement regarding the prior 2009 criminal threat offense was not substantially outweighed by the probability that its admission would necessitate undue consumption of time, create substantial danger of undue prejudice, confuse the issues, or mislead the jury. (*Thompson*, *supra*, 1 Cal.5th at p. 1114.) The probative value of the evidence was high and outweighed any

12

prejudicial effect. Any prejudice was minimal because the stipulated statement of the 2009 incident sanitized the facts and was brief. In addition, the prior incident was helpful and relevant to determining the element of specific intent, because defendant's threat made in 2009, was substantially similar to the charged crime of uttering a criminal threat against Linda. Also, introducing the evidence would not require undue consumption of time, because the evidence consisted of a brief stipulation of the facts, and it was unlikely introducing the stipulated statement would confuse the issues or mislead the jury. It was clear from the stipulated statement that the prior 2009 criminal threat offense involved a different, prior, uncharged incident.

Defendant argues the evidence of the 2009 offense should have been excluded because the evidence was cumulative of other evidence, which included taped statements of defendant's charged criminal threat offenses against the officers apprehending defendant. It is well recognized that "neither the prosecution nor the defendant has a right to present cumulative evidence that creates a substantial danger of undue prejudice. . . . In *Ewoldt*, the Supreme Court emphasized that cumulative evidence of uncharged offenses may be inadmissible under Evidence Code section 352. The court explained, 'In many cases the prejudicial effect of such evidence would outweigh its probative value, because the evidence would be merely cumulative regarding an issue that was not reasonably subject to dispute.'" (*People v. Williams* (2009) 170 Cal.App.4th 587, 611, quoting *People v. Ewoldt, supra*, 7 Cal.4th at pp. 405-406.) There are no

13

bright-line rules for determining when evidence is cumulative.  (*People v. Williams*, *supra*, at p. 611.)

Here, the trial court did not abuse its discretion by admitting into evidence the stipulated statement that defendant committed the 2009 prior criminal threat offense.  The evidence was not unduly cumulative because the recorded criminal threats defendant made against the deputies involved different circumstances than those when defendant threatened Linda and previously threatened the young woman in 2009.  As discussed above, the evidence of the 2009 criminal threat offense was relevant to proving that defendant intended that his statements to Linda would be understood as threats.  The evidence of defendant committing the criminal threat offense in 2009, under similar circumstances demonstrated that, even though defendant may have been drinking and intoxicated when he threatened Linda, he nevertheless had the requisite specific intent that Linda understand his statements were threats against her.  The trial court thus did not abuse its discretion in allowing evidence of defendant's prior 2009 criminal threat offense.

IV.

*PITCHESS* MOTION

Defendant requests this court to independently review any and all in camera proceedings conducted in furtherance of defendant's motion to compel the Riverside County Sheriff's Department to produce documents related to Deputy Rhodes. Defendant further requests this court to determine whether the trial court erred in denying

14

the release of any of the requested documents.  The People agree this court should conduct such a review.

On December 28, 2016, defendant filed a motion for production of documents under Evidence Code section 1043 (*Pitchess* motion).  Defendant requested disclosure of any records or complaints concerning Deputy Rhodes fabricating or falsifying charges, evidence, reports, records, or testimony or (2) committing dishonesty or other conduct unbecoming to an officer.

In support of defendant's *Pitchess* motion, defense counsel submitted a declaration stating that defendant denied that he threatened to kill deputies Rhodes and Hephner and their families.  Defense counsel asserted that defendant intended to use the requested information in Deputy Rhodes's personnel file to cross-examine and impeach him by showing that Deputy Rhodes falsified statements, evidence, and incident reports.

On January 24, 2017, the trial court heard defendant's *Pitchess* motion and granted an in camera hearing to review the requested documents, if any, related to false reports, complaints, or statements.  The court conducted the in camera hearing and ordered the transcript of the in camera hearing sealed.  After the in camera hearing, the trial court stated in court that no discoverable records or information was produced during the in camera hearing.

Under *Pitchess*, *supra*, 11 Cal.3d 531, "a criminal defendant has a limited right to discovery of peace officer personnel records in order to ensure 'a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.'"

15

(*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1037, fn. 3; accord, *Chambers v. Superior Court* (2007) 42 Cal.4th 673, 679.)  In 1978, the California Legislature codified *Pitchess* motion privileges and procedures through the enactment of Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 through 1045.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81, fns. omitted; *Chambers v. Superior Court*, *supra*, at p. 679.)  The trial court is vested with broad discretion when ruling on a *Pitchess* motion seeking discovery of police officer personnel records.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)  During an in camera hearing to determine whether any records are discoverable, the custodian of records is only required to provide those documents that are potentially responsive to the defendant's specific request.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1230.)  We review a trial court's *Pitchess* motion rulings for an abuse of discretion.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

Based on our independent, in camera review of the sealed record, which includes the in camera *Pitchess* hearing transcript and any documents presented at the *Pitchess* hearing on January 24, 2017, we conclude the trial court properly conducted a *Pitchess* hearing, and there are no documents that constitute relevant discoverable *Pitchess* material.  Finding no disclosable evidence in the sealed record provided to this court, we conclude the trial court did not abuse its discretion in not releasing any of Deputy Rhodes's confidential records.

16

V.

CONSECUTIVE SENTENCING UNDER SECTION 654

Defendant contends the trial court erred in imposing consecutive sentences on counts 1 and 2, in violation of section 654. We agree the court should have stayed the sentence on count 2.

Count 1 alleges defendant willfully and unlawfully committed an assault upon Linda with a deadly weapon, a knife (§ 245, subd. (a)(1)). Count 2 alleges that on the same day, defendant, in "a different offense from but connected in its commission with the charge set forth in count 1," willfully and unlawfully, with the specific intent that his statements would be taken as a threat, threatened Linda that he would commit a crime resulting in great bodily injury and death, and the threat conveyed to Linda a gravity of purpose and an immediate prospect of execution, causing her to reasonably be in sustained fear for her safety.

During the trial, Linda testified that, while she and defendant were amicably talking, defendant suddenly pulled a knife out of his pocket. Linda later testified they had been arguing before defendant pulled out the knife. He put the knife up to his own chin and said he was going to kill himself. He was about three feet from Linda. She told him to put down the knife. Then defendant told Linda he was also going to kill her. Defendant pointed the knife towards her throat and then her leg. Because this scared Linda, she ran away and yelled for help. After reviewing a portion of the preliminary

17

hearing transcript, Linda acknowledged she had stated during the preliminary hearing that defendant held a knife to her neck when threatening to kill her and her family.

During the trial, the prosecution also played for the jury the recording of defendant's statements to Rhodes and Hephner during booking. Defendant was recorded threatening Rhodes, Hephner, and any other deputies involved. Defendant stated during the recording that "I'm just tellin' you man-man, one of them [f---ers] are gettin' stabbed tonight. I'm gonna grab a pen or whatever's closest to me, I'm gonna stab the mother [f---ers] tonight, you're gonna have to kill me . . . kill the mother [f---er], I'm killin' somebody."

Defendant further stated that after sentencing, "I'm callin' my homeboys, I'm callin' my home girls and I'm gonna sit around (unintelligible). I can guarantee that, I know where her family lives. I know where she lives . . . ." When Rhodes asked defendant what caused defendant to become so upset at Linda that night, defendant explained that he was upset because Linda had had sex with another man, Mike, behind defendant's back. Linda had denied it and told defendant she loved him. Defendant told her to go have sex with Mike, and that defendant was going to beat up Mike. Then Linda ran off and lied to the security guard.

The prosecutor argued during closing argument that defendant committed assault with a deadly weapon against Linda (count 1) by holding a knife within arm's length of her neck, resulting in Linda yelling for help, fleeing, and asking security to call 911. The prosecutor then told the jury that, as to count 2, that Linda testified that, as defendant

18

"held the knife up to her," he threatened to kill her. The prosecutor noted Linda forgot to mention during her trial testimony that defendant also threatened her family, which Linda testified to during the preliminary hearing. The prosecutor told the jury "You don't need both. It's one or the other." In other words, a conviction for uttering a criminal threat against Linda did not require a finding that defendant threatened to harm both Linda and her family.

The prosecutor summarized the evidence supporting count 2 as follows: "[Y]ou look at the circumstances surrounding what he said: Holding the knife up to her thr[o]at. Telling her that he was from a gang. Making himself sound scary to her. And the things he added to his statement and his demeanor and acting crazy and being angry towards her all leading up to it, intended that she understand that he was serious. He wasn't joking. He wasn't saying it in a passive way or anything like that. [¶] That everything surrounding the statement that he made to her was an intent to make her afraid and understand what he was saying would be a threat to her."

During sentencing, the trial court stated that section 654 did not apply to sentencing defendant and sentenced defendant to consecutive sentences on each count. Defendant did not object or argue section 654 applied to consecutive sentencing on counts 1 and 2. The trial court noted during sentencing that section 654 was not involved in the court's sentencing.

On March 8, 2019, the court sentenced defendant on count 1 (assault with a deadly weapon), deemed the principal count, to 25 years to life. The court sentenced defendant

on count 2 (uttering a criminal threat) to 25 years to life, with the sentence running consecutive to count 1.

A. *Applicable Sentencing Law*

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute proscribes punishment for multiple crimes arising from a single act, and also for multiple crimes arising from an indivisible course of conduct. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) We determine whether a course of conduct is "divisible" by looking at the defendant's intent and objective, not the temporal proximity of the offenses. (*Id*. at p. 789; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208, quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19 ["Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor."].)

"'[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.'" (*People v. Hicks, supra*, 6 Cal.4th at p. 789, quoting *People v. Harrison* (1989) 48 Cal.3d 321, 335.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation

20

committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Harrison*, *supra*, at p. 335.)  A course of conduct is divisible in time "'where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.'" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717-718; see, e.g., *id.* at p. 718.)

We review factual determinations for substantial evidence.  (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)  When those facts are undisputed the application of section 654 raises a question of law, which we review de novo.  (*People v. Corpening* (2016) 2 Cal.5th 307, 312.)

B.  *Analysis*

Defendant contends count 1 (assault with the knife) and count 2 (uttering a criminal threat) arose out of a single indivisible occurrence and the crimes were incident to a single objective and intent.  Defendant argues he was punished for the simultaneous acts of pointing a knife at Linda and threatening to kill her and her family.  Therefore, under section 654, this court should stay defendant's sentence on one of the two counts.  We agree.

The People contend the consecutive sentence on count 2 is proper because defendant committed the two crimes alleged in counts 1 and 2 with separate intents and objectives.  The People argue the two separate crimes consisted of (1) defendant holding

21

a knife to Linda's throat, placing Linda in sustained, immediate fear for her own safety, and (2) defendant threatening to cause great bodily injury or death to Linda and her family. The People reason that defendant's threat against Linda's family was a separate offense because Linda's fear for her family continued, even after defendant removed the knife from Linda's throat. But defendant only made a criminal threat against Linda, even though when he did so, he threatened her by telling her he would kill both Linda and her family.

Based on the allegations stated in counts 1 and 2, the evidence presented at trial, and the People's closing argument, we conclude that counts 1 and 2 are not separate crimes committed with separate intents and objectives. Defendant's use of his knife by pointing it at Linda was incidental to accomplishing or facilitating his single objective of scaring Linda by threatening to kill her and her family. Defendant's acts of pointing a knife at Linda while threatening to kill her and her family were not separate and distinct acts. The evidence, as well as the prosecutor's closing argument, demonstrates that defendant committed the crime of uttering a criminal threat within the course of assaulting Linda with a knife. It is undisputed that when defendant committed both crimes, he had the same intent and objective of placing Linda in sustained, immediate fear for her and her family's safety. Therefore, defendant cannot be punished twice for the same acts under section 654.

Accordingly, section 654 proscribes multiple punishment for both counts 1 and 2. Normally, under such circumstances, section 654 requires punishment "under the

22

provision that provides for the longest potential term of imprisonment." But, here, defendant's sentences on counts 1 and 2 are identical. Therefore, since count 1 is the principal term, defendant's sentence on count 2 shall be stayed under section 654.

VI.

FINES AND FEES

The trial court stated during sentencing that defendant, who was 44 years old, should not be required to pay any court-ordered fines or fees, other than a $300 restitution fine. Defendant argues that, because it is unclear whether the trial court was aware it had the discretion not to impose the $300 restitution fine, this matter should be remanded to allow the court to consider striking the $300 restitution fine. Alternatively, defendant argues the prosecution failed to demonstrate defendant had the ability to pay the $300 restitution fine and, therefore, the matter should be remanded for an ability-to-pay hearing. The People argue defendant does not have a constitutional right to an ability-to-pay hearing as to the $300 restitution fine.

During the sentencing hearing, the trial court sentenced defendant to four consecutive terms of 25 years to life, stayed defendant's three prison priors (§ 667.5, subd. (b)), and stayed defendant's two nickel priors (§ 667, subd. (a)). The court then addressed imposition of fines and fees, noting: "Any time I impose a long prison term, I have absolutely no interest in being punitive towards the defendant. And that's my view unless there is restitution to a victim. I don't see that here." The court further stated that "no amount of money would be imposed upon [defendant]." The court then stated that

23

therefore defendant would not be ordered to pay the cost of the presentence probation report and presentence incarceration fees. In addition, the court stated the $6,000 restitution fine and parole revocation restitution fine recommended by the probation department were ordered reduced to the minimum fine of $300.

After the court stated it would impose a $514.59 booking fee, $120 criminal conviction assessment fee, and $160 court operations assessment fee, defense counsel requested those fees be stayed. Defense counsel indicated that those fees used to be mandatory but no longer had to be imposed. The court responded that it would "stay everything that I can stay pursuant to law because that's consistent with my opening remarks." The court added that defendant "is going to prison for life, and I don't think he ought to be sending us his commissary money. . . . I'll leave it at that." The only fine or fee the court ordered defendant to pay was the statutory minimum $300 restitution fine and stayed $300 parole revocation restitution fine.

Defendant was sentenced on March 8, 2019, after *Dueñas*, *supra*, 30 Cal.App.5th 1157 was decided on January 8, 2019. The trial court's order striking and staying several mandatory statutory fees indicates the court was aware that it had the discretion not to impose statutory fines and fees under *Dueñas*, and considered defendant's ability to pay the fines and fees. As to fines, the court in *Dueñas* held that "the execution of any restitution fine imposed under [section 1202.4] must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164; but see

24

*People v. Hicks* (2019) 40 Cal.App.5th 320 [disagreeing with *Dueñas*], review granted Nov. 26, 2019, S258946.)

We need not determine whether the holding in *Dueñas*, *supra*, 30 Cal.App.5th 1157, was correct and need not address defendant's objection to the $300 restitution fine because defendant forfeited his objection to the fine by failing to object during the sentencing hearing. (*People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Jenkin* (2019) 40 Cal.App.5th 30, 40, review granted Nov. 26, 2019, S258729, and dismissed July 29, 2020; *People v. Forshay* (1995) 39 Cal.App.4th 686, 689; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

Nevertheless, we will consider defendant's objection to imposition of the $300 restitution fine on the merits, because the trial court clearly stated it intended to "stay everything that I can stay pursuant to law because that's consistent with my opening remarks." The only fine or fee the court ordered defendant to pay was the statutory minimum $300 restitution fine. The trial court's comments reflect that it would have stayed the fine had the court been aware it could do so. Because the trial court had the ability to stay the $300 restitution fine and clearly would have done so had it been aware it could, the $300 restitution fine shall be ordered stayed.

## VII.

## DISPOSITION

The judgment is modified by (1) staying defendant's sentence on count 2 (uttering a criminal threat against Linda) under section 654, and (2) staying the $300 restitution

25

fine.  The judgment is affirmed in all other respects.   The trial court is directed to

forward to the Department of Corrections and Rehabilitation an amended abstract of

judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

I concur:


MILLER

Acting P. J.

[*P. v. Hart*, E072352]

MENETREZ, J., Concurring and Dissenting.

    I concur in the majority opinion except for part V of the Discussion.

    We review the trial court's express or implied findings concerning application of Penal Code section 654 for substantial evidence. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) In my view, the trial court could reasonably have found that (1) defendant's intent in holding the knife to the victim's throat was to assault her, (2) his intent in telling the victim that he was going to kill her family was to make her fear for her family's safety, and (3) those intents were independent of each other, and neither intent was incidental to the other. (*People v. Pinon* (2016) 6 Cal.App.5th 956, 968.) I accordingly would affirm the imposition of consecutive sentences for the assault and criminal threat convictions.

MENETREZ       

J.

1